# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| Micro-Gaming Ventures, LLC | Case No. 3:25-CV-04102-ZNQ-JTQ |
| *Plaintiff,* | **Oral Argument Requested** |
| v. | |
| DraftKings, Inc. | |
| *Defendant.* | |

## BRIEF IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS UNDER RULE 12(b)(6)

James E. Cecchi
Melissa E. Flax
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

*Attorneys for Defendant DraftKings Inc.*
G. Hopkins Guy III (*pro hac vice*)
BAKER BOTTS L.L.P.
1001 Page Mill Road Building One,
Suite 200
Palo Alto, CA 94304-1007
(650) 739-7500

Clarke W. Stavinoha (*pro hac vice*)
BAKER BOTTS L.L.P.
2001 Ross Ave, Suite 900
Dallas, TX 75201
(214) 953-6484

Jamie R. Lynn (*pro hac vice*)
Thomas C. Martin (*pro hac vice*)
Michael Kachmarik (*pro hac vice*)
BAKER BOTTS L.L.P.
700 K St. N.W.
Washington, D.C. 20001
(202) 639-7786

## Table of Contents

Page

I.    Introduction...............................................................................................1

II.   Legal Argument .......................................................................................2

   A.    Pleading Standard.............................................................................2

   B.    35 U.S.C. § 101 .................................................................................3

   C.    The Asserted Patents Are Invalid for Claiming Ineligible Subject
         Matter. ..............................................................................................4

      1.    The Geolocation Elements of Claims 1-18 of the '679 Patent
            Claim Ineligible Subject Matter...................................................5

         a.    *Alice* Step 1: Claims 1-18 are directed to an abstract idea.
               ...................................................................................5

         b.    *Alice* Step 2: The claims lack an inventive concept. ......10

      2.    The Geolocation Elements of Claims 1-11 of the '244 Patent
            Claim Ineligible Subject Matter.................................................13

         a.    *Alice* Step 1: Claims 1-11 are directed to an abstract idea.
               .................................................................................13

         b.    *Alice* Step 2: The claims lack an inventive concept. ......18

      3.    The Micro-Betting Elements of the Claims of the '311 Patent
            Claim Ineligible Subject Matter.................................................19

         a.    *Alice* Step 1: Claims 1-20 are directed to an abstract idea.
               .................................................................................19

         b.    *Alice* Step 2: The claims lack an inventive concept. ......25

      4.    The Micro-Betting Elements of Claims 1-20 of the '231 Patent
            and Claims 1 and 9 of the '392 Patent Claim Ineligible Subject
            Matter. ......................................................................................26

         a.    *Alice* Step 1: Claims 1-20 of the '231 Patent and claims 1
               and 9 of the '392 Patent are directed to an abstract idea.
               .................................................................................26

         b.    *Alice* Step 2: The claims lack an inventive concept. ......30

      5.    Claims 2-4 and 10-12 of the '392 Patent Claim Ineligible
            Subject Matter..........................................................................31

a.  *Alice* Step 1: Claims 2-4 and 10-12 are directed to an abstract idea. ................................................................31

b.  *Alice* Step 2: The claims lack an inventive concept. ......34

6.  Claims 5-8 and 13-16 of the '392 Patent Claim Ineligible Subject Matter. ..........................................................35

a.  *Alice* Step 1: Claims 5-8 and 13-16 are directed to an abstract idea. ................................................................35

b.  *Alice* Step 2: The claims lack an inventive concept. ......39

D.  The Allegations in Micro-Gaming's Complaint Do Not Preclude Dismissal. ...........................................................................39

III.  Conclusion ................................................................................40

# Table of Authorities

**Page(s)**

## CASES

*Affinity Labs of Tex., LLC v. Amazon.com Inc.*,
   838 F.3d 1266 (Fed. Cir. 2016) ..........................................................7, 23, 29, 40

*AI Visualize, Inc. v. Nuance Commc'ns, Inc.*,
   97 F.4th 1371 (Fed. Cir. 2024) ............................................................21, 32, 39

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   573 U.S. 208 (2014).....................................................................................3, 4, 8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................3

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................3

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018) ..........................................................................5

*Beteiro, LLC v. DraftKings Inc.*,
   104 F.4th 1350 (Fed. Cir. 2024) ..................................................................passim

*Bilski v. Kappos*,
   561 U.S. 593 (2010)..........................................................................................23

*Bot M8 LLC v. Sony Corp. of Am.*,
   465 F. Supp. 3d 1013 (N.D. Cal. 2020)............................................................37

*Broadband iTV, Inc. v. Amazon.com, Inc.*,
   113 F.4th 1359 (Fed. Cir. 2024) ...................................................................7, 34

*BSG Tech LLC v. BuySeasons, Inc.*,
   899 F.3d 1281 (Fed. Cir. 2018) ...................................................................passim

*buySAFE, Inc. v. Google, Inc.*,
   765 F.3d 1350 (Fed. Cir. 2014) ........................................................................22

*CalAmp Wireless Networks Corp. v. ORBCOMM, Inc.*,
    233 F. Supp. 3d 509 (E.D. Va. 2017) ................................................................15

*CG Tech. Dev., LLC v. Big Fish Games, Inc.*,
    2016 WL 4521682 (D. Nev. Aug. 29, 2016) ....................................16, 28, 36, 39

*CG Tech. Dev., LLC v. FanDuel, Inc.*,
    442 F. Supp. 3d 840 (D. Del. 2020), *aff'd*, 858 F. App'x. 363 (Fed. Cir. 2021) 9,
    14, 15, 16, 28

*CG Tech. Dev., LLC v. William Hill U.S. Holdco, Inc.*,
    404 F. Supp. 3d 842 (D. Del. 2019) ............................................................28, 39

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014) ...........................................................passim

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
    880 F.3d 1356 (Fed. Cir. 2018) ...................................................................8, 33

*Diogenes Ltd. v. DraftKings, Inc.*,
    623 F. Supp. 3d 423 (D. Del. 2022) ..................................................................23

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016) ...........................................................passim

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016) ........................................................................29

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
    839 F.3d 1089 (Fed. Cir. 2016) ........................................................................15

*Front Row Techs., LLC v. NBA Media Ventures, LLC*,
    204 F. Supp. 3d 1190 (D.N.M. 2016), *aff'd sub nom.*, *Front Row Techs. LLC v.*
    *MLB Advanced Media, L.P.*, 697 F. App'x 701 (Fed. Cir. 2017) ......9, 10, 24, 32

*In re Smith*,
    815 F.3d 816 (Fed. Cir. 2016) .........................................................1, 22, 38, 39

*In re TLI Comm'ns LLC Pat. Litig.*,
    823 F.3d 607 (Fed. Cir. 2016) ..........................................................................22

*In re Ursa Operating Co., LLC*,
    2024 WL 278397 (3d Cir. Jan. 25, 2024) .........................................................11

*Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.*,
   50 F.4th 1371 (Fed. Cir. 2022) ...................................................................passim

*Interval Licensing LLC v. AOL, Inc.*,
   896 F.3d 1335 (Fed. Cir. 2018) ............................................................................4

*Location Based Servs., LLC v. Niantic, Inc.*,
   295 F. Supp. 3d 1031 (N.D. Cal. 2017), *aff'd*, 742 F. App'x 506 (Fed. Cir. 2018) ....................................................................................................................10

*NexRF Corp. v. Playtika Ltd.*,
   547 F. Supp. 3d 977 (D. Nev. 2021), *aff'd* 2022 WL 1513310 (Fed. Cir. May 13, 2022)
   ...............................................................................................................9, 23, 37

*RaceTech, LLC v. Kentucky Downs, LLC*,
   167 F. Supp. 3d 853 (W.D. Ky. 2016), *aff'd*, 676 F. App'x 1009 (Fed. Cir. 2017) ...........................................................................................................passim

*RecogniCorp, LLC v. Nintendo Co., Ltd.*,
   855 F.3d 1322 (Fed. Cir. 2017) ...............................................................6, 21, 27

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018) ........................................................4, 17, 22, 34

*Savvy Dog Sys., LLC v. Pa. Coin, LLC*,
   2024 WL 1208980 (Fed. Cir. Mar. 21, 2024)........................................24, 33, 38

*Trading Techs. Int'l, Inc. v. IBG LLC*,
   921 F.3d 1084 (Fed. Cir. 2019) ..................................................................passim

*Two-Way Media LTD v. Comcast Cable Commc'ns, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017) ..........................................................................13

*Universal Secure Registry LLC v. Apple Inc.*,
   10 F.4th 1342 (Fed. Cir. 2021) ...........................................................................22

*Weisner v. Google, LLC*,
   51 F.4th 1073 (Fed. Cir. 2022) ...........................................................................26

*WinView Inc. v. FanDuel, Inc.*,
   2025 WL 1908758 (D.N.J. July 10, 2025) ..........................................................10

**STATUTES**

35 U.S.C. § 101 ...................................................................................1, 2

**STATE CONSTITUTIONS**

N.J. Const. art. IV, § VII, para. 2 ...........................................................11

**OTHER AUTHORITIES**

N.J. Admin. Code § 13:69F-1A.4(f) (2012) ............................................11

## I.  Introduction

Defendant DraftKings Inc. ("DK") moves to dismiss Plaintiff Micro-Gaming Ventures, LLC's ("Micro-Gaming") Complaint for Patent Infringement (Dkt. 1) in its entirety under Fed. R. Civ. P. 12(b)(6).  The Complaint should be dismissed with prejudice because U.S. Patent Nos. 8,545,311 (Dkt. 1-1, "'311 Patent"), 8,632,392 (Dkt. 1-2, "'392 Patent"), 8,734,231 (Dkt. 1-3, "'231 Patent"), 11,783,679 (Dkt. 1-4, "'679 Patent"), and 12,266,244 (Dkt. 1-5, "'244 Patent") (collectively, the "Asserted Patents") claim patent-ineligible subject matter under 35 U.S.C. § 101.

The Asserted Patents relate to computer-implemented methods or systems for a type of betting called micro-betting.  According to the Complaint, micro-betting involves "small-scale, individual bets on targeted outcomes within a larger event." Dkt. 1, ¶ 11.  A micro-bet could be placed on the outcome of "a pitch to a batter in a baseball game" (*e.g.*, strike, ball, *etc.*).  '311 Patent at 3:46-57.  A micro-bet, however, is just one type of bet, and the Federal Circuit has made clear that "[a] wagering game is, effectively, a method of exchanging and resolving financial obligations" and comparable to other fundamental economic practices found abstract by the Supreme Court.  *In re Smith*, 815 F.3d 816, 818-19 (Fed. Cir. 2016).

In addition, certain of the Asserted Patents include claims related to authorizing access to an online wagering service based on the location of a device—geolocation.  Nothing in the Asserted Patents, however, is directed to improving the

technical capability of a computer or mobile device itself—rather, they claim an abstract function or use. Courts, including the Federal Circuit in its precedential opinion in *Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350 (Fed. Cir. 2024), have repeatedly found claims involving computer-implemented betting (including based on location) directed to ineligible abstract ideas. *Id.* at 1356 n.3 (collecting cases).

All named inventors on the Asserted Patents are IP attorneys and DK believes that one or more of the inventors has an ownership interest in Micro-Gaming. This is not the first time that the inventors have been involved in asserting invalid patent claims against DK,[1] and some have had other patents involving similar technology invalidated under § 101 for analogous reasons to those argued herein. *Infra*, n.2. Put simply, this case never should have been filed after *Beteiro*. Micro-Gaming's claims exhibit "well-settled indicators of abstractness" and amount to no more than abstract betting and geolocation ideas implemented using conventional computers. *Id.* at 1355. Because such claims are ineligible, the Court should grant DK's motion.

## II. Legal Argument

### A. Pleading Standard

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

---

[1] Michael Shore and Alfonso Chan represented AG 18, LLC in a suit in this District alleging infringement of five patents by DK. *See* Case No. 2-21-cv-15737. All but one claim of those patents was found unpatentable.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### B. 35 U.S.C. § 101

Abstract ideas are not patentable. *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). Whether a claim covers an abstract idea is determined through a two-step test. *Id.* at 217-18. Step one considers whether a claim's "character as a whole" is "directed to" an abstract idea. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016). A claim that "only performs an abstract idea on a generic computer" is directed to an abstract idea. *BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1285 (Fed. Cir. 2018).

If a claim is directed to an abstract idea, step two considers whether the claim's elements, individually or as an ordered combination, transform the nature of the claim into an eligible application. *See Alice*, 573 U.S. at 217. The inquiry is not whether the claim "as a whole is unconventional or non-routine" but whether it contains an "inventive concept" sufficient to ensure that it amounts to significantly more than the abstract idea. *BSG Tech*, 899 F.3d at 1290. Reciting conventional activity or limiting a claim to a particular technological environment does not

transform an abstract claim into an eligible invention.  *Alice*, 573 U.S. at 222-25.

Eligibility is "a question of law that may contain underlying issues of fact." *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1342 (Fed. Cir. 2018).  Patent eligibility "may be, and frequently has been, resolved on a Rule 12(b)(6)" motion. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018).

### C. The Asserted Patents Are Invalid for Claiming Ineligible Subject Matter.

According to the Complaint, the '679 and '244 Patents "relate to location-based authorization for wagering," while the '311, '392, and '231 Patents relate to "enabling remote-device users to wager on 'micro-events' of games[.]"  Dkt. 1, ¶¶ 10, 11.  In total, the Asserted Patents include 85 claims.  The Complaint alleges that DK infringes "at least claim 1" of each asserted patent.  Dkt. 1, ¶¶ 38, 48, 58, 68, 78.

Micro-Gaming's claims exhibit the "well-settled indicators of abstractness" enumerated in *Beteiro*, which found claims directed to the abstract idea of "exchanging information concerning a bet and allowing or disallowing the bet based on where the user is located" ineligible.  104 F.4th at 1355.  Like the *Beteiro* claims, Micro-Gaming's claims: (1) broadly recite generic steps of a kind the Federal Circuit has held are abstract; (2) are drafted using results-focused functional language with no specificity about how the purported invention achieves those results or improves technology; (3) are similar to claims found ineligible; and (4) can be analogized to longstanding "real-world" activities.  *Id.* at 1355-57.  There is no inventive concept

in any claim that transforms it into a patent-eligible application of an abstract idea.

It is well-settled that the eligibility of multiple claims may be determined based on an analysis of a representative claim. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). In this motion, DK groups the claims of the Asserted Patents into six groups and focuses its analysis on a representative claim for each. Attachment 1 identifies the groupings, their respective representative claims, and the abstract idea to which each is directed. While the discussion below is necessarily repetitive, given the substantially similar deficiencies across the various claim sets, the thorough analysis herein establishes that each claim of Micro-Gaming's Asserted Patents is directed to ineligible subject matter and invalid.

**1. The Geolocation Elements of Claims 1-18 of the '679 Patent Claim Ineligible Subject Matter.**

**a. *Alice* Step 1: Claims 1-18 are directed to an abstract idea.**

Claims 1-18 of the '679 Patent recite, at a high-level, various wagering-related activities performed based upon a location of a mobile device and/or a jurisdiction associated with the location—the geographic location or geolocation of the device. The Federal Circuit has made clear that such claims are not patent eligible. *See Beteiro*, 104 F.4th at 1355 (holding abstract and ineligible claims involving determining whether a bet is allowed based on location). Claim 1 recites:

> 1. A **computer-implemented method for location-based wagering**, said method performed by a computer system having one or more processors and memory storing one or more programs for

5

execution by said one or more processors, said method comprising:

**invoking an online wagering service** via a mobile device, the online wagering service including a micro-betting graphical user interface (GUI) and a control function that sets when a micro-betting opportunity begins and when the micro-betting opportunity ends;

**determining a location of said mobile device and a jurisdiction** associated with said location; and

**authorizing said mobile device access to said online wagering service based on said location and the jurisdiction** of said mobile device.

'679 Patent at 36:29-43. Claim 1 broadly recites three abstract steps: "invoking" an online wagering service via a mobile device; "determining" a location of the mobile device and an associated jurisdiction; and "authorizing" the mobile device based on the location and the jurisdiction. Claim 1 is thus directed to the abstract idea of authorizing access to an online micro-betting wagering service based on the location of a mobile device that invoked the wagering service and an associated jurisdiction.

Claim 1 is representative of claim 13, which recites a "system" that performs the steps in claim 1. The dependent claims do not change the focus of the claims to something other than the abstract idea. Claims 2-5, 8-10, 14, and 16-18 recite abstract "determining," "displaying," or "calculating" steps related to the concept of performing wagering activities based on location and jurisdiction. *See RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) ("Adding one abstract idea . . . to another abstract idea . . . does not render the claim non-abstract."). Claims 6, 7, and 15 generically recite offering "general" or micro-wagering. Claims 11 and 12 recite conventional hardware to implement the abstract idea. Claim 1 is

representative of all the '679 Patent claims because each is "substantially similar and linked to the" same abstract idea as claim 1. *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).

Claim 1 exhibits "well-settled indicators of abstractness." *Beteiro*, 104 F.4th at 1355. Claim 1 broadly recites generic "invoking," "determining," and "authorizing" steps drafted using "result-focused functional language, containing no specificity about how the purported invention achieves those results." *Id.* at 1356. Other than conventional computer techniques, Claim 1 recites ***no detail*** regarding how the wagering service is invoked, how the geolocation of the mobile device and associated jurisdiction are determined, or how access to the online wagering service is authorized based on the location and jurisdiction. At this level of generality, the claim "do[es] no more than describe a desired function or outcome, without providing any limiting detail that confines the claim to a particular solution to an identified problem." *Affinity Labs of Tex., LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016). "Claims of this nature are almost always found to be ineligible for patenting under Section 101." *Beteiro*, 104 F.4th at 1356.

The micro-betting graphical user interface or "GUI" and control function do not make the claim non-abstract. *See Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359, 1368-69 (Fed. Cir. 2024) (a user interface "does not automatically" make a claim not abstract). At the level of detail claimed, the micro-betting GUI does not

constitute an improved user interface.  *Cf. Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356 (Fed. Cir. 2018).  Like the rest of the claim, the control function is claimed in terms of what it does, not *how* it does it.  Further, these elements are not the claim's "focus."  They merely limit the abstract idea to a particular environment, which is insufficient for eligibility.  *Alice*, 573 U.S. at 222.

Claim 1 does not recite an improvement to computer-related technology.  The computer elements (*e.g.*, computer system, processors, memory, mobile device, and GUI) are generic and there is no indication in the claims or specification that the underlying functioning of any of these elements is improved.  Notably, claim 1 is not limited to any specific technique for determining location and the patent does not purport to have invented (or improved upon) the geolocation determination techniques in claim 11 (*e.g.*, GPS).  Because the claims use these generic techniques and computer elements "as tools and do not claim any improvement in the computer-related technology itself[,]" they are abstract.  *Beteiro*, 104 F.4th at 1357.

Representative claim 1 is thus closely analogous to the location-based betting claims DK proved ineligible in *Beteiro*.  The *Beteiro* claims similarly involved "a computer-implemented method" and communication device comprising "a global positioning device" that "determines a position or location."  *Id.* at 1353-54.  The claim consisted of "abstract steps" including "determining whether the bet is allowed or disallowed using the location information" and "processing information" for

placing or disallowing the bet. *Id.* at 1355. The Federal Circuit held that the claim was directed to the abstract idea of "exchanging information concerning a bet and allowing or disallowing the bet based on where the user is located." *Id.* at 1355-57. Claim 1 is similarly directed to the abstract concept of authorizing access to a wagering service based on location (and jurisdiction) and again fails *Alice* step one for analogous reasons. The Federal Circuit has already found that limiting access to betting based on location and jurisdiction, as in claim 1, is "a fundamental and longstanding activity, i.e., an abstract idea." *Id.* at 1356-57.

Indeed, the Federal Circuit has summarily affirmed several decisions finding claims involving analogous location-based betting activities abstract. *See CG Tech. Dev., LLC v. FanDuel, Inc.*, 442 F. Supp. 3d 840, 843-44, 846-48 (D. Del. 2020), *aff'd*, 858 F. App'x. 363 (Fed. Cir. 2021) (finding method claim including step of "determining a first location of a mobile gaming device" directed to abstract idea of "determining game configuration based on location"); *NexRF Corp. v. Playtika Ltd.*, 547 F. Supp. 3d 977, 991-92 (D. Nev. 2021), *aff'd* 2022 WL 1513310 (Fed. Cir. May 13, 2022) (finding incentivizing gambling tailored to user's location abstract).

Moreover, authorizing access based on a user's location is a patent-ineligible abstract idea. *See Front Row Techs., LLC v. NBA Media Ventures, LLC*, 204 F. Supp. 3d 1190 (D.N.M. 2016), *aff'd sub nom.*, *Front Row Techs. LLC v. MLB Advanced Media, L.P.*, 697 F. App'x 701 (Fed. Cir. 2017). In *Front Row*, the district

court invalidated a claim that "determines a user's location based on a handheld device's communications with a 'computing device'" and "authorizes the user to receive streaming video . . . based on his or her location."[2]  *Id* at 1280.  The Federal Circuit agreed that the claim was directed to the abstract idea of "authorizing handheld devices to receive streaming video based on a user's location."  *Id.* at 1269. Claim 1 similarly authorizes access to a wagering service based on location.  The fact that claim 1 authorizes access based on jurisdiction in addition to location is immaterial.  *See Location Based Servs., LLC v. Niantic, Inc.*, 295 F. Supp. 3d 1031, 1053 (N.D. Cal. 2017), *aff'd*, 742 F. App'x 506 (Fed. Cir. 2018) ("Though this claim requires more information to be considered in the altering of the map, this difference does not render claim 1 non-abstract.").  Thus, claim 1 is directed to an abstract idea.[3]

**b.  *Alice* Step 2: The claims lack an inventive concept.**

Claim 1 recites no inventive concept.  The "invoking," "determining," and

---

[2] Luis M. Ortiz and Kermit D. Lopez, two of the named inventors on the Micro-Gaming Asserted Patents, were named inventors on patents at issue in *Front Row*.

[3] For these reasons, this case is distinguishable from *WinView Inc. v. FanDuel, Inc.*, 2025 WL 1908758 (D.N.J. July 10, 2025), cited in Micro-Gaming's response to DK's pre-motion letter.  Dkt. 27 at 1, 2 n.3.  Unlike in *WinView*, DK has established that the claimed systems and methods for location-based wagering, considered as a whole, are "directed towards abstract ideas implemented by various technological means as opposed to modifications or improvements of the technological means themselves" under controlling Federal Circuit precedent.  *WinView*, 2025 WL 1908758, at *8.  Contrary to Micro-Gaming's assertions, the high-level recitation of a micro-betting GUI and control function does not make the claims non-abstract. Dkt. 27 at n.3.

"authorizing" steps amount to a claim to the abstract idea and cannot supply an inventive concept. *BSG Tech.*, 899 F.3d at 1290 ("[A] claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept[.]"). In any event, these steps reflect conventional activities in the gambling industry, not inventive concepts. During prosecution, the Examiner found that "[l]ocation based wagering via remote devices is well known[.]" Dkt. 1-11 at 3. "Those accepting bets have *always* had to confirm that the bettor . . . was located in a place [*i.e.*, a location and jurisdiction] where gambling was allowed." *Beteiro*, 104 F.4th at 1356-57; *see also* Attachment 2 at 7 (New Jersey 1976 referendum allowing gambling in Atlantic City, but not elsewhere); N.J. Const. art. IV, § VII, para. 2. Setting when betting opportunities begin and end is also a fundamental practice prescribed in law. *See* N.J. Admin. Code § 13:69F-1A.4(f) (2012) (bets must be placed before "No more bets" announced in automated craps).[4] The dependent claims involving determining whether use is allowed in the jurisdiction, determining prescribed limitations, offering options that conform with applicable laws, generating proper disclosures, and calculating taxable events are not inventive concepts because they are themselves abstract as well as conventional activities of legalized gambling.

---

[4] *See* Fed. R. Evid. 201(b)(1) ("The court may judicially notice a fact that . . . is generally known within the trial court's territorial jurisdiction[.]"); *In re Ursa Operating Co., LLC*, 2024 WL 278397, at *2 n.1 (3d Cir. Jan. 25, 2024) (the Court may take judicial notice of state laws) (citations omitted).

The additional elements—processors, memory, programs, mobile device, GUI, control function, software modules—do not supply an inventive concept. The specification admits the processor is "commercially available" and the processor, memory, and mobile devices "may be conventional components[.]" '679 Patent at 9:46-52. The GUI is a generic "user interface on the [admittedly conventional] remote device[.]" *Id.* at 16:37-41, 12:10-12; *see Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1093 (Fed. Cir. 2019) (GUI for trading does not save the claim from abstraction). The control function is "preferably implemented as a software module" and the code for "carrying out operations of the present invention" may be "written in conventional" languages. *Id.* at 8:25-32. The mobile devices in claim 12 are well-known and commercially available. *Id.* at 12:4-6 ("Apple iPhone").

The '679 Patent does not purport to have invented or improved upon the techniques for determining a mobile device's location in claim 11. The specification describes the various techniques at a high-level, without specificity, and admits that determining location via transponder was commercially available. *Id.* at 10:60-66 ("transponders such as the Apple 'iBeacon'"). "In context, this can only plausibly mean that the patent applicant drafted the specification understanding that a person of ordinary skill in the art knew what" these techniques were and that "using [them] for the purposes disclosed in the patent was routine, conventional, and well-understood." *Beteiro*, 104 F.4th at 1358. Indeed, geolocation was a key component

12

of New Jersey's efforts to legalize Internet gambling, which were underway before the earliest possible priority date of the '679 Patent. Dkt. 1-10 at 1, 4.

There is also nothing inventive about the ordered combination. Claim 1 recites a "conventional ordering of steps" one would expect to see—if not be legally required to follow—when implementing the abstract idea. *Two-Way Media LTD v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017). Authorizing access to betting based on location and jurisdiction is something legal casinos have always implemented. The only difference is that claim 1 performs these steps on a computer, which is not an inventive concept. *BSG Tech*, 899 F.3d at 1290-91. Thus, the '679 Patent's claims are ineligible and therefore invalid.

**2. The Geolocation Elements of Claims 1-11 of the '244 Patent Claim Ineligible Subject Matter.**

**a. *Alice* Step 1: Claims 1-11 are directed to an abstract idea.**

The '244 Patent claims priority to the same provisional patent application as the '679 Patent and claims similar subject matter. Claim 1 is the only independent claim and recites a "computer-implemented method for location-based wagering":

> 1. A computer-implemented method for location-based wagering, the method performed by a computer system having one or more processors and memory storing one or more programs for execution by the one or more processors, the computer-implemented method comprising:
> ***invoking* an online wagering service** via a mobile device having a video display screen that supports viewing of a macro-event activity and micro-event gaming data on the video display screen, the online wagering service including a micro-betting graphical user interface

13

(GUI) and a control function that sets when a micro-betting opportunity begins and when the micro-betting opportunity ends;

*determining* a location of the mobile device;

*authorizing* **the mobile device access to the online wagering service based on the location** of the mobile device, wherein the micro-event gaming data comprises a micro-bet or a group of micro-bets;

**processing a test to determine whether a selection of a micro-bet or a group of micro-bets is made by a user**, wherein, upon determining that the selection of the micro-bet or the group of micro-bets made, **entering and processing the micro-bet** or the group of micro-bets via a server, wherein, upon determining that the selection has not been made, **offering one or more additional new micro-bets** associated with a particular micro-outcome for selection by the user; and

**generating a result** of the processed micro-bet or the group of micro-bets to the user.

'244 Patent at 31:24-32:7. Claim 1 recites similar "invoking," "determining," and "authorizing" steps as claim 1 of the '679 Patent, except it only determines a location and the authorization is based only on location. Additionally, claim 1 broadly recites processing a test to determine whether a selection of a micro-bet or a group of micro-bets is made by a user. If so, the micro-bet is entered and processed, and a result is generated to the user. If not, additional new micro-bets are offered.

Claim 1 is thus directed to a combination of abstract ideas: (1) authorizing access to an online micro-betting wagering service based on the location of a mobile device and (2) processing or offering an additional micro-bet based on processing a test to determine whether a user selected a micro-bet. *See Elec. Power Grp.*, 830 F.3d at 1354 (finding claim directed to a "combination of [] abstract-idea processes"); *FanDuel*, 442 F. Supp. 3d at 848 (finding claim directed to combination

of "independently abstract ideas" including determining location, determining a game configuration for the location, and implementing that configuration).

Authorizing access based on location is abstract as discussed for '679 Patent claim 1. *Supra*, § II.C.1.a. The additional steps in claim 1 of the '244 Patent merely add another ineligible abstract idea. Processing a test to determine whether a user selected a micro-bet is analyzing information, which is abstract. *See Elec. Power Grp.*, 830 F.3d at 1354 ("analyzing information" is "within the abstract idea category") (collecting cases). Moreover, "taking some action in response to the information" (*e.g.*, either entering/processing the micro-bet and generating a result or offering an additional micro-bet) is "abstract as an ancillary part of" such analysis. *CalAmp Wireless Networks Corp. v. ORBCOMM, Inc.*, 233 F. Supp. 3d 509, 512-13 (E.D. Va. 2017); *see also FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1093 (Fed. Cir. 2016) (notifying a user when misuse is detected is an abstract idea).

These aspects of claim 1 are no different from longstanding "brick-and-mortar" casino practices. After being authorized to enter a casino, a gambler walking along a row of slot machines is presented with a first betting opportunity (*e.g.*, at a first machine). If the gambler selects the first machine and puts in a coin, the bet is entered/processed and a result generated. If not, additional options are presented (*e.g.*, by a second machine). Thus, it is not surprising that courts have routinely found claims related to processing bets unpatentably abstract. *See, e.g.*, *Beteiro*, 104

F.4th at 1354 (finding claim involving "processing information for placing the bet" abstract); *Fanduel*, 442 F. Supp. 3d at 843-844 (finding claim involving "a display screen of the mobile gaming device to display an indication of the first game outcome" abstract); *RaceTech, LLC v. Kentucky Downs, LLC*, 167 F. Supp. 3d 853, 862-63 (W.D. Ky. 2016), *aff'd*, 676 F. App'x 1009 (Fed. Cir. 2017) ("This fundamental activity of wagering on sporting contests, thus, is properly characterized as an abstract idea."); *CG Tech. Dev., LLC v. Big Fish Games, Inc.*, 2016 WL 4521682, at *9 (D. Nev. Aug. 29, 2016) (facilitating wagering, allowing users to accept wagers, and determining an outcome are "fundamental practices").

The "essentially result-focused, functional character" of claim 1 confirms it is abstract. *Elec. Power Grp.*, 830 F.3d at 1356. The "invoking," "determining," and "authorizing" steps recite only results as discussed above. *Supra*, § II.C.1.a. Claim 1 recites ***no details*** regarding what the test is, how the test is processed, how a micro-bet is entered and processed (other than "via" a generic server), how an additional bet is offered, or how a result is generated. The patent's description of a "test" is as devoid of detail as the claim. '244 Patent at 17:10-12 ("a test can be processed to determine if a selection of a micro-bet or a group of micro-bets has been made").

The micro-betting GUI and control function do not make the claim non-abstract as discussed for the '679 Patent. *Supra*, § II.C.1.a. The same is true of the generic "display screen" that "supports viewing of a macro-event activity and micro-

16

event gaming data." "As a general rule, 'the collection, organization, and display of two sets of information on a generic display device is abstract.'" *Trading Techs.*, 921 F.3d at 1093. Further, the display screen itself is not improved. Indeed, the '244 Patent does not purport to have improved upon, or solved a problem related to, the functionality of processors, memory, mobile devices, display screens, GUIs, or techniques for determining location. Processing a generic "test" is not a specific solution to a technological problem. Because the claims use "computers as tools and do not claim any improvement[,]" they are abstract. *Beteiro*, 104 F.4th at 1357.

Claims 2-11 depend from claim 1 and are abstract for the same reasons. The "touch screen" in claim 2 is generic and, like the other computer elements, does not render the claims non-abstract. Claims 3 and 6 recite nothing about *how* to achieve simultaneous display and are abstract as mere results. Displaying two sets of information as in claims 3 and 6 is just as abstract as it is in claim 1. *Trading Techs.*, 921 F.3d at 1093. Claims 4-5 and 7-9 merely limit the information displayed, but limiting "claims to a particular field of information . . . does not move the claims out of the realm of abstract ideas." *SAP*, 898 F.3d at 1169. Finally, claims 10-11 recite abstract results—"determining when a selection" is made and "automatically entering" the bet—with no detail regarding how they are achieved. Accordingly, all claims of the '244 Patent are abstract, and the Court should consider *Alice* step two.

### b. *Alice* Step 2: The claims lack an inventive concept.

The "invoking," "determining," "authorizing," "processing," and "generating" steps are the abstract ideas and cannot supply an inventive concept. *BSG Tech*, 899 F.3d at 1290. Merely describing "the functions of the abstract idea itself, without particularity[,]" is "simply not enough under step two." *Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1382 (Fed. Cir. 2022). Authorizing access based on location is conventional activity in the gaming industry as discussed above. *Supra*, § II.C.1.b. The same is true of processing a bet. *Supra*, § II.C.2.a.

The additional elements—computer system, processors, memory, programs, mobile device, video display screen, graphical user interface, control function, server, touch screen—are all generic computer elements used to implement the abstract idea. The '244 Patent admits such components are conventional: the processor is "commercially available" and the processor, memory, programs, and mobile devices "may be conventional components." '244 Patent at 9:34-56, 18:62-67 (control function "preferably implemented as software module"), 8:29-40 (code "for carrying out operations of the present invention" written in "conventional" programming languages). The GUI, display screen, and touch screen interface are parts of the admittedly conventional mobile device, which could be a commercially available "Apple iPhone." *Id.* at 6:29-33, 12:6-11, 16:31-35, 16:22-25. The patent does not purport to have invented or improved upon these components, nor to have

invented any new or improved technique for determining location or authorizing access. *Id.* at 10:64-11:3 (describing generic location determination techniques such as GPS and commercially available "Apple 'iBeacon'" transponders); *Beteiro*, 104 F.4th at 1357-58 (finding GPS on a mobile phone conventional as of 2002).

There is nothing inventive about the ordered combination. The ordered steps are analogous to conventional casino operations required by law—an unauthorized device (or gambler) would not be permitted to place a bet in a casino. *Supra*, § II.C.1.b. There is also no unconventional arrangement of elements—the claims recite a conventional mobile device that communicates with a server in an ordinary manner. Accordingly, claims 1-11 of the '244 Patent are ineligible and invalid.

### 3. The Micro-Betting Elements of the Claims of the '311 Patent Claim Ineligible Subject Matter.

#### a. *Alice* Step 1: Claims 1-20 are directed to an abstract idea.

Claims 1-20 are directed to the abstract idea of analyzing and providing information about a potential micro-bet and receiving a micro-bet from an authenticated remote device. Claims 1, 14, and 20 are independent. Claim 1 broadly recites a "method for micro-betting" that includes six abstract steps: (1) "providing" a micro-betting system; (2) "authenticating" a remote computing device for access to information associated with macro-events, including betting options; (3) "identifying" a potential micro-outcome within a macro-event; (4) "generating" multiple displayable betting options needed to make a betting decision with respect

to the potential micro-outcome, including parimutuel betting options; (5) "providing information" including the betting options to the remote computing device for display with real-time video of a live event; and (6) "receiving" a micro-bet from the remote computing device. '311 Patent at 17:17-55. Claim 1 is representative of claims 14 and 20, which recite a "system" and a "secure server," respectively, because they recite instructions to perform the "authenticating," "identifying," "generating," "providing information," and "receiving" steps of claim 1.

Each step of claims 1, 14, and 20 is individually abstract; collectively, they amount to the abstract ideas of analyzing and providing information about a potential micro-bet and receiving a micro-bet from an authenticated remote device. The dependent claims do not change the focus of the claims as a whole. Claims 2-3 and 14-16 broadly recite result-oriented steps of "displaying" data (*e.g.*, a "micro-bet" or compiled "betting data" indicative of betting options) either "in association with" or "while" video of the macro-event is displayed. Claims 4-5 and 17-18 recite "permitting" a user to place a micro-bet. Claims 6 and 19 recite another "authenticating" step related to committing funds. Claims 7-9 recite conventional networks (*e.g.*, the Internet) and Claims 10-12 recite conventional remote computing devices (*e.g.*, a desktop computer). Finally, claim 13 recites an abstract step of "configuring" information "for display" on a display supporting "simultaneous viewing" of betting options and video. Thus, the dependent claims are themselves

abstract, reciting insignificant extra-solution activity or generic computer elements. *See RecogniCorp*, 855 F.3d at 1327 (combining abstract ideas "does not render the claim non-abstract"). Claim 1 is therefore representative because the claims "recite little more than the same abstract idea[.]" *Content Extraction*, 776 F.3d at 1348.

Claim 1 is very similar to the *Beteiro* claims directed to the abstract idea of "exchanging information concerning a bet and allowing or disallowing the bet based on where the user is located." 104 F.4th at 1355. *Beteiro* involved "generic steps" frequently found to be abstract: "detecting information, generating and transmitting a notification based on that information, receiving a message (bet request), determining (whether the bet is allowed based on location data), and processing information (allowing or disallowing the bet)." *Id.* at 1355-56. Similarly, claim 1 generically recites "identifying" a potential micro-outcome from "information," "generating" multiple betting options, "providing information" about a macro-event, including the betting options, to the remote computing device, and "receiving" a micro-bet from the remote computing device. Thus, the claims of the '311 Patent are analogous to those in *Beteiro*, except they lack the location-based determination that the patent owner in *Beteiro* argued (unsuccessfully) rendered the claims eligible.

"[O]btaining, manipulating, and displaying data, particularly when claimed at a high level of generality, are abstract concepts." *AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1378 (Fed. Cir. 2024); *see also Elec. Power Grp.*,

830 F.3d at 1353-54 (collecting, analyzing, and displaying information, without more, is an abstract idea). The fact that claim 1 involves steps performed over a data network is immaterial, because "a computer receiv[ing] and send[ing] information over a network – with no further specification – is not even arguably inventive." *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014).

The steps involving "providing a micro-betting system" including a secure server and "authenticating a remote computing device" do not make the claims non-abstract. The step of providing a micro-betting system "merely provide[s] a generic environment in which to carry out the abstract idea[.]" *In re TLI Comm'ns LLC Pat. Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016). The "authenticating" step is claimed at a high level, without any specificity regarding how the device is authenticated. *See Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1354–55 (Fed. Cir. 2021) (finding claims that "generically provide[d]" for collecting information to perform authentication in a conventional manner abstract).

That claim 1 recites "micro-betting" and involves "information associated with potential future, real life, live macro-events," a "potential real life, live micro-outcome" and a "real monetary bet" does not change the outcome; limiting "claims to a particular field of information" does not make them non-abstract. *SAP*, 898 F.3d at 1169. Moreover, a "micro-bet" is itself abstract because it is "a method of exchanging and resolving financial obligations" and comparable to "other

'fundamental economic practice[s]' found abstract by the Supreme Court." *Smith*, 815 F.3d at 818-19; *see also Bilski v. Kappos*, 561 U.S. 593, 611 (2010) (fundamental economic practice not patent eligible). Claims involving remote gaming (including various types of bets) are routinely invalidated, most recently in *Beteiro*. 104 F.4th at 1356 n.3 (collecting cases); *RaceTech*, 167 F. Supp. 3d at 862-863 (claims to "pari-mutuel" betting abstract); *Diogenes Ltd. v. DraftKings, Inc.*, 623 F. Supp. 3d 423, 427 (D. Del. 2022) ("cashing out" a bet abstract); *supra*, § II.C.1.a. Even if Micro-Gaming invented micro-betting (they did not), "a claim for a *new* abstract idea is still an abstract idea." *NexRF*, 547 F. Supp. 3d at 989.

The similarities between claim 1 and the ineligible *Beteiro* claims go beyond betting. Claim 1 is also drafted using result-focused, functional language. Claim 1 recites *no specificity* regarding how the computing device is authenticated, how the potential micro-outcome is identified, how the multiple betting options are generated, or how information about the macro-event and betting options are displayed with real-time video. The "displaying," "compiling," "permitting," "authenticating," and "configuring" steps in dependent claims 2-6, 13, and 15-19 are similarly result-focused. The claims provide no "limiting detail" that confines them "to a particular solution to an identified problem." *Affinity Labs*, 838 F.3d at 1269; *see also Beteiro*, 104 F.4th at 1356 (such claims "are almost always" ineligible).

There is also no technical improvement. The claimed computer elements—a

secure server, remote computing device, data network, display screen, user interface, the Internet, wireless and cellular networks, handheld wireless device, desktop computer, remote computer server, processor, data bus, computer-usable medium—are generic and function in their ordinary way. The patent does not teach a new form of authentication and "nothing in the claim or the specification describes a new technological way of displaying." *Savvy Dog Sys., LLC v. Pa. Coin, LLC*, 2024 WL 1208980, at \*3 (Fed. Cir. Mar. 21, 2024). The patent also does not describe, let alone claim, a new technique for transmitting or displaying real-time video of a live event, or for simultaneously viewing betting options with video. *See Front Row*, 204 F. Supp. 3d at 1268-69 ("sending video of an event" to devices is abstract); *Trading Techs.*, 921 F.3d at 1093 (displaying "two sets of information" is abstract).

Finally, like *Beteiro*, the claims here are analogous to "real-world" activities. *Id.* at 1356. Micro-betting involves "small-scale, individual bets on targeted outcomes within a larger event," such as a sporting event. Dkt. 1, ¶ 11. One example outcome is "a pitch to a batter in a baseball game" (*e.g.*, will it be a strike, ball, *etc.*). '311 Patent at 3:46-57. Undoubtedly, such bets have been made between friends in ballpark bleachers since baseball became America's pastime. Regardless, the "fundamental activity of wagering on sporting contests" is "properly characterized as an abstract idea." *RaceTech*, 167 F. Supp. 3d at 862-863. While micro-betting encompasses one type of sports bet, "a claim is not patent eligible merely because it

applies an abstract idea in a narrow way." *BSG Tech*, 899 F.3d at 1287.

### b. *Alice* Step 2: The claims lack an inventive concept.

There is no inventive concept in the claims. The steps involving "providing" a micro-betting system, "authenticating" a device, "identifying" a potential micro-outcome, "generating" betting options, "providing information" including the betting options to the device, and "receiving" a micro-bet are the abstract idea and cannot add significantly more. *See BSG Tech*, 899 F.3d at 1290; *Int'l Bus. Machs.*, 50 F.4th at 1382. Dependent claims 2-6, 13, and 15-19 recite abstract steps involving "displaying," "compiling," or "configuring" information, "permitting" a user to bet, and "authenticating," which cannot supply an inventive concept for the same reason.

The claimed computer elements are all recited in a generic fashion and used in their ordinary manner. The secure server includes "a processor, a data bus coupled to the processor, access to a data network, and a computer-usable medium embodying computer code[.]" '311 Patent at 6:5-9, 7:3-7. The patent admits that the processor, memory, server, data bus, and remote computing device "may be conventional components[.]" *Id.* at 9:42-60, 9:61-10:4 ("commercially available" processor). The computing device is one of a laundry list of generic, "conventional" devices (*e.g.*, Smartphone, desktop computer). *Id.* at 9:48-60, 11:25-29, 11:51-55. The display screen is "associated with and/or integrated with" the generic computing device. *Id.* at 16:36-41. The user interface is described at a high level as something

that already exists in the computing device and is used to "enter wagers." *Id.* at 11:30-36. "Where, as here, the specification 'describes the components and features listed in the claims generically,' it 'support[s] the conclusion that these components and features are conventional.'" *Beteiro*, 104 F.4th at 1358 (quoting *Weisner v. Google, LLC*, 51 F.4th 1073, 1083-84 (Fed. Cir. 2022)).

There is also nothing inventive about the ordered combination, which amounts to a conventional client-server arrangement involving a secure server and a remote computing device. "When computers communicate over a network, the process is functionally generic and unpatentable." *RaceTech*, 167 F. Supp. 3d at 864.

### 4. The Micro-Betting Elements of Claims 1-20 of the '231 Patent and Claims 1 and 9 of the '392 Patent Claim Ineligible Subject Matter.

#### a. *Alice* Step 1: Claims 1-20 of the '231 Patent and claims 1 and 9 of the '392 Patent are directed to an abstract idea.

Claim 1 of the '231 Patent broadly recites a "computer-implemented method for micro-betting" that includes three abstract steps: (1) "designating" a control function for managing a micro-bet; (2) "configuring" the control function to determine when the micro-bet is available and when it has closed to bettors; and (3) "randomizing" at least one available micro-bet. '231 Patent at 22:7-19. Claim 1 is representative of claim 11 of the '231 Patent, which recites a "system for micro-betting" that includes instructions to perform the steps of claim 1. Claim 1 is also representative of claims 1 and 9 of the '392 Patent, which recite a method and system

for micro-betting, respectively, that each involve substantially the same steps as '231 Patent claim 1. Considered as a whole, each independent claim is directed to the abstract idea of configuring a designated control function for managing randomized micro-bets to determine when a micro-bet is available or closed to bettors.

The '231 Patent's dependent claims do not change the focus to something other than this abstract idea. Claims 2-6, 12-16, and 19-20 broadly recite functional, result-oriented steps that are themselves abstract and tied to the same abstract idea as claim 1.[5] Claims 2 and 12 involve "remotely controlling" or "remotely managing and controlling electronically placing" the micro-bet. Claims 3 and 13 involve "automatically obtaining a portion of a profit." Claims 4 and 14 involve managing and controlling via a sports book. Claims 5, 6, 9, 10, 16, and 20 involve "electronically placing" a bet. Claim 15 recites "managing and controlling via a controller comprising" the control function. Claims 7-8 and 17-18 recite generic types of wireless terminals. Thus, the dependent claims are themselves abstract or recite generic computer elements. *See RecogniCorp*, 855 F.3d at 1327. The Court should treat claim 1 of the '231 Patent as representative because the claims "recite little more than the same abstract idea[.]" *Content Extraction*, 776 F.3d at 1348.

The "method for micro-betting" in claim 1 is abstract because it constitutes a method for organizing human activity, namely managing betting (micro-betting).

---

[5] No claims depend from claims 1 or 9 of the '392 Patent.

The specifications confirm this.  The patents provide an example in which "sports book personnel can, for example, sit in a sports book booth and control the availability of micro-betting on a game being televised in the sports book and the gamblers sit there and bet on every play as they watch."  '231 Patent at 18:12-16; '392 Patent at 16:29-33.  The patents describe "a person controlling the availability" of bets and "utilizing a control mechanism such as the control function[.]"  '231 Patent at 17:45-55; '392 Patent at 15:62-16:5.  "[B]etting options can be displayed . . . and become available for selection via a 'reset' by the human controller" and "the human controller can 'hit' or select a graphically displayed 'set' button, thereby freezing all bets."  '231 Patent at 17:56-67; '392 Patent at 16:11-15.

Courts have repeatedly held claims involving managing or implementing betting abstract for similar reasons.  *See RaceTech*, 167 F. Supp. 3d at 862-63 ("The wagering systems described in [the] patents encompass a fundamental human activity. . . . This fundamental activity of wagering on sporting contests, thus, is properly characterized as an abstract idea."); *Big Fish*, 2016 WL 4521682, at *9 (facilitating wagering, allowing users to offer and accept wagers, determining the outcome of wagers, and transferring funds are "fundamental practices of the gaming industry"); *CG Tech. Dev., LLC v. William Hill U.S. Holdco, Inc.*, 404 F. Supp. 3d 842, 849 (D. Del. 2019) ("creating a betting market, receiving bets, closing the betting market, and resolving bets—was previously done by human gaming

operators"); *FanDuel*, 442 F. Supp. 3d at 847 (claims involving gaming abstract as "'method[s] of organizing human activity'"); *Beteiro*, 104 F.4th at 1356-57.

Moreover, like all of Micro-Gaming's claims, representative claim 1 is result-focused and lacks any specificity that might confine it to a particular solution to an identified problem. *Affinity Labs*, 838 F.3d at 1269. Claim 1 recites *no specificity* regarding how the control function is designated, how the control function is configured to determine when a micro-bet is available or not, or how "at least one available micro-bet" is randomized. The "remotely controlling," "automatically obtaining a portion of profit," "managing and controlling via a sports book," "electronically placing," "remotely managing and controlling electronically placing," and "managing and controlling via a controller" steps in dependent claims 2-6, 9-10, 13-16, and 19-20 are claimed in a similarly result-focused manner.

Additionally, the "control function" is "preferably implemented as a software module." '231 Patent at 17:11-14. For software-related patents, courts consider whether the claims improve the functioning of the computer as compared to when "computers are invoked merely as a tool." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016). Here, the specifications describe no improvement to computers, nor is any improvement evident in the claims. The computer elements are generic and function in their ordinary manner. The patent does not disclose new technology for "randomizing," "remotely controlling," or "electronically placing"

micro-bets, or "automatically obtaining a portion of profit."  The claims merely use "computers as tools" and are therefore abstract.  *Beteiro*, 104 F.4th at 1357.

### b. *Alice* Step 2: The claims lack an inventive concept.

There is no inventive concept in claims 1-20 of the '231 Patent or claims 1 and 9 of the '392 Patent.  The steps involving "designating" a control function, "configuring" the control function, and "randomizing" at least one micro-bet "merely describ[e] the functions of the abstract idea itself, without particularity," which "is simply not enough under step two."  *Int'l Bus. Machs.*, 50 F.4th at 1382; *see also BSG Tech*, 899 F.3d at 1290.  Dependent claims 2-6, 9-10, 12-16, and 19-20 are abstract steps that do not supply an inventive concept for the same reason.

There is also nothing inventive about the additional elements.  The computer components are conventional, claimed in a generic fashion, and used in an ordinary manner.  The specifications admit that the processor, memory, data bus, computer, wireless handheld device, Smartphone, and network "may be conventional components such as those used in many conventional data processing systems[.]" '231 Patent at 9:45-10:5 ("commercially available" processor).  The wireless terminal can be any of a list of generic, "conventional" devices (*e.g.*, Smartphone). *Id.* at 9:45-60, 6:8-13, 11:28-32, 11:54-58, 20:41-46, 21:43-48.  These conventional elements do not supply an inventive concept.  *Beteiro*, 104 F.4th at 1358.

There is also nothing inventive about the ordered combination.  There is no

unconventional arrangement of generic elements or otherwise inventive combination of elements: a control function is "designated" and then "configured." There is nothing inventive about randomizing micro-bets, alone or in combination with the rest of the claim elements. Randomization is well-understood, routine, and conventional in the context of betting and is akin to shuffling a deck of cards. In the context of representative claim 1, it is merely extra solution activity that, at the level of generality claimed, cannot transform the abstract idea into something more. Accordingly, '231 Patent claims 1-20 and '392 Patent claims 1 and 9 are ineligible.

### 5. Claims 2-4 and 10-12 of the '392 Patent Claim Ineligible Subject Matter.

#### a. *Alice* Step 1: Claims 2-4 and 10-12 are directed to an abstract idea.

Claims 2-4 and 10-12 relate to using two display screens to display data. Claim 10 recites a "multiple display screen method" including three abstract steps:

> 10. A **multiple display screen method** for the placement of micro-bets, said system comprising:
> **displaying, via at least one display screen, a micro-betting GUI** for placing and managing micro-bets with respect to at least a macro-event and micro-events thereof;
> **providing at least one other display screen for displaying video** of said macro-event; and
> **randomizing available micro-bets** among said micro-bets to prevent cheating.

'392 Patent at 19:38-20:2. The focus of claim 10 is displaying information on generic display screens, namely "a micro-betting GUI" on one screen and "video of said macro-event" on another. Thus, claim 10 is directed to the abstract idea of

displaying a micro-betting GUI for placing and managing randomized micro-bets on one screen and displaying, on another screen, video of the macro-event the micro-bets are based on. Claim 2 recites a "multiple display screen system" that has substantially the same scope as claim 10. *Id.* at 18:49-56. Dependent claims 11 and 3 describe the micro-betting GUI as providing a graphic display of micro-bets and synchronizing display of micro-bets with the video. Claims 12 and 4 recite displaying live video. Claim 10 is representative of claims 2-4 and 11-12 because they recite "the same abstract idea[.]" *Content Extraction*, 776 F.3d at 1348.

Claim 10 exemplifies "well-settled indicators of abstractness." *Beteiro*, 104 F.4th at 1355. **First**, claim 10 "broadly recite[s] generic steps" courts have held are abstract (*e.g.*, "displaying" a micro-betting GUI, "providing" another display screen for displaying video, and "randomizing" micro-bets). "[O]btaining, manipulating, and displaying data, particularly when claimed at a high level of generality, are abstract concepts." *AI Visualize*, 97 F.4th at 1378. The fact that the method involves displaying "a micro-betting GUI" on one screen and "video" on another is immaterial because, "[a]s a general rule, 'the collection, organization, and display of two sets of information on a generic display device is abstract.'" *Trading Techs.*, 921 F.3d at 1093; *see also Elec. Power Grp.*, 830 F.3d at 1355 (displaying two types of information concurrently insufficient to confer eligibility); *Front Row*, 204 F. Supp. 3d at 1268-69 ("sending video" to handheld devices is an abstract idea).

*Second*, claim 10 recites a series of desired outcomes, with no detail regarding how the results are achieved.  *Beteiro*, 104 F.4th at 1355-56.  Claim 10 recites no specifics regarding how to implement the micro-betting GUI for placing and managing bets, how the display screen is provided, how video is displayed, or how micro-bets are randomized to prevent cheating.  Claims involving betting that lack specificity, like claim 10, are almost always ineligible.  *Id.* at 1356.

*Third*, the claims do not improve computer functionality.  Claim 10 recites generic elements—display screens and a GUI—used in their conventional manner.  The patent does not disclose a new technique for randomizing or "a new technological way of displaying."  *Savvy Dog Sys.*, 2024 WL 1208980, at *3.  Indeed, the patent confirms that the multiple display screen approach was not prompted by a technical problem, but "[t]o overcome [the] possibility" that "[i]t may be a violation of NFL and other sports' copyrights to have the bets literally over-layed on the same screen[.]"  *Id.* at 16:52-56; *see also Beteiro*, 104 F.4th at 1357 ("Content regulation and checking legal compliance are rooted in the abstract – they are legal problems, not technical problems[.]").  Thus, claim 10 is unlike the claims directed to an improved display interface found eligible in *Core Wireless*.  The *Core Wireless* claims recited a specific, technological solution (*i.e.*, a "specific manner of displaying a limited set of information to the user" of devices with small screens).  880 F.3d at 1362-1363.  Claim 10 is not directed to an improved user interface; it

merely functionally claims a GUI for placing and managing micro-bets. The mere fact that claim 10 "involve[s] a user interface does not automatically put the claims in the same category as *Core Wireless*[.]" *Broadband iTV*, 113 F.4th at 1368–69.

**Fourth**, claim 10 is analogous to longstanding "real-world" activities. The Background section in the patent acknowledges that, before the alleged invention, casinos had "large sports and event betting parlors" that "display the bets that a person may make on various sporting or types of events." '392 Patent at 1:51-54. Anyone who has visited a Las Vegas sportsbook knows that these venues also displayed events being bet upon (*e.g.*, football games) on other screens. *See* '392 Patent at 16:28-38; *see also* '231 Patent at 18:11-21. The claims merely apply this longstanding practice to micro-betting using generic display screens.

Dependent claims 11-12 and 3-4 are equally abstract. Claim 11 fails to recite any details of *how* to configure the micro-betting GUI to provide a graphic display or synchronize the graphic display with video of the macro-event. *See Int'l Bus. Machines*, 50 F.4th at 1379 (finding claim involving functional "synchronizing" limitation abstract). Claims 4 and 12 recite that the video is live video, the mere displaying of which is still abstract. *See SAP*, 898 F.3d at 1169 (limiting claims to particular information does not make claims non-abstract).

### b. *Alice* Step 2: The claims lack an inventive concept.

Claims 10 and 2 include no inventive concept. The "displaying," "providing,"

and "randomizing" steps are abstract and "cannot supply the inventive concept[.]" *BSG Tech*, 899 F.3d at 1290.  Regardless, displaying bets on one screen and video of the bet-upon event on another is conventional casino activity.  *Supra*, § II.C.5.a. Claims 11 and 3 are abstract in their own right and are not inventive concepts.

There is also nothing inventive about the additional elements or the way they are combined.  The display screens are "associated with and/or integrated with" a generic computing device (*e.g.*, a laptop or Smartphone).  '392 Patent at 14:57-61, 9:44-48, 10:4-8.  The patent describes the claimed GUI for placing and managing micro-bets generically and at a high level.  *Id.* at 5:8-23, 16:39-67.  "In context, this can only plausibly mean that the patent applicant drafted the specification understanding that a person of ordinary skill in the art knew" how to use this functionality "and that using it for the purposes disclosed in the patent was routine, conventional, and well-understood."  *Beteiro*, 104 F.4th at 1358.

### 6. Claims 5-8 and 13-16 of the '392 Patent Claim Ineligible Subject Matter.

#### a. *Alice* Step 1: Claims 5-8 and 13-16 are directed to an abstract idea.

Claims 5-8 and 13-16 relate to providing online meetings where people can compete on a macro-event using micro-betting.  '392 Patent at 17:12-15.  Claim 13 recites a "system for online micro-betting[.]"  *Id.* at 20:11-36.  Claim 13 broadly recites six steps: (1) permitting players to meet online and place micro-bets on a macro-event; (2) selecting a particular macro-event; (3) allowing the players to

select a controller and a control function; (4) selecting micro-bets to be made available; (5) placing at least one micro-bet; and (6) randomizing available micro-bets. *Id.* at 20:11-36. The focus of claim 13 is the abstract idea of enabling a plurality of players to meet online and place micro-bets on a selected macro event.

Claim 13 is representative of claim 5, which recites a corresponding "method for online micro-betting" that involves substantially the same steps as claim 13, except it does not recite "placing at least one micro-bet." *Id.* at 18:64-19:11. Dependent claims 14 and 6 recite that the "macro-event is displayed as video online," claims 15 and 7 recite that "said micro-bets comprise customizable bets," and claims 16 and 8 recite "at least one user creates said customizable bets." The Court should treat claim 13 as representative because the claims are "substantially similar" and recite the same abstract idea. *Content Extraction*, 776 F.3d at 1348.

Enabling players to meet online and place micro-bets on a selected macro event (*e.g.*, a sporting event) is an abstract idea. *See Big Fish*, 2016 WL 4521682, at *1 (finding claims involving allowing users to play casino games on mobile devices with other users through an online community abstract). The first step "permit[s]" players to meet online and place micro-bets with respect to a macro-event. The remaining elements broadly recite result-oriented steps that purport to facilitate players placing a micro-bet. As a whole, the claim is an abstract method of organizing human activity. *RaceTech*, 167 F. Supp. 3d at 862-63 ("The wagering

system described in [the patents] encompass a fundamental human activity.").

Indeed, the '392 Patent itself analogizes the claims to human activities. Claims 5 and 13 correspond to the method "for online competition and micro-bets" in Figure 13. *Compare* '392 Patent at cls. 5, 13 *with id.* at Fig. 13. In describing Figure 13, the patent analogizes the claims to "real-world" poker games: "In the 'real world', six, eight, or ten people can sit at a poker table and gamble with one another." '392 Patent at 17:1-15. The claimed approach merely applies this longstanding activity on a computer, replacing poker with micro-bets. *Id.* Accordingly, the '392 Patent's "fundamental activity of wagering on sporting contests, thus, is properly characterized as an abstract idea." *RaceTech*, 167 F. Supp. 3d at 862-63. That the claim involves micro-bets, instead of poker, does not make it non-abstract. *Id.* at 863 ("Pari-mutuel gambling on live races is a longstanding practice, and betting on recorded races does not change the fundamental characteristics of the activity.").

The result-focused, functional language of claim 13 confirms that it is directed to an abstract idea. *Beteiro*, 104 F.4th at 1355-56; *see also NexRF*, 547 F. Supp. 3d at 989. Each step is "a result, not a means to achieve it. So, up front it's abstract." *Bot M8 LLC v. Sony Corp. of Am.*, 465 F. Supp. 3d 1013, 1021 (N.D. Cal. 2020). There is no recitation of *how* the system permits players to meet online, selects a macro-event, allows players to select a controller and control function, selects micro-bets to make available, places a micro-bet, or randomizes available micro-bets.

The step involving "allowing" players to select a controller and a control function for controlling and managing micro-bets does not make the claims non-abstract. The "controller" and "control function" are recited in a generic manner, and the "control function" is claimed in terms of what it does, not *how* it does it. Further, the specification explains that the controller can be a human, reinforcing that the claim is merely a method for organizing human activity. *See* '392 Patent at 17:42-46. The specification provides only a high-level description of the "control function" as "a software module and/or a hardware module" that "can be configured to set" when a micro-betting opportunity begins and ends and "can be configured to include a reset operation" and "selection of a betting type[.]" *Id.* at 15:47-61. The specification does not describe how these unclaimed features are implemented. Even if they had been claimed, they amount to nothing more than rules "of conducting a wagering game," which are abstract. *Smith*, 815 F.3d at 818-19.

There is no plausible argument that claim 13 improves computer functionality. Nothing in the claim suggests that the functionality of the generic processor, data bus, or computer-usable medium is improved. Indeed, the patent admits these are "conventional" elements. *See, e.g.*, '392 Patent at 7:37-43, 7:59-8:21. Moreover, the '392 Patent does not describe or claim a new technique for "randomizing" and, with regard to claims 14 and 6, does not disclose "a new technological way of displaying." *Savvy Dog Sys.*, 2024 WL 1208980, at *3. The claims merely use

generic computer components in a conventional way to implement the abstract idea.

### b. *Alice* Step 2: The claims lack an inventive concept.

Claim 13 lacks an inventive concept. The steps the processor is configured to perform, individually and collectively, amount to a claim to an abstract idea and cannot add significantly more. *See BSG Tech*, 899 F.3d at 1290. Regardless, the patent admits that players meeting and placing bets is conventional, "real world" activity, not an inventive concept. '392 Patent at 17:10-11; *see also Big Fish*, 2016 WL 4521682, at *9 (allowing users to offer and accept wagers are "fundamental practices in the gaming industry"); *William Hill*, 404 F. Supp. 3d at 848-49 ("[S]ome gaming operators allow users to bet on . . . whether a particular player will strike out in a particular at-bat in a baseball game."). Randomizing bets is akin to shuffling cards for poker and "purely conventional[.]" *Smith*, 815 F.3d at 819.

The specification admits that the additional elements—generic processor, data bus, and computer usable medium—are conventional, "commercially available" components. '392 Patent at 7:37-43; 7:59-8:21. There is nothing inventive about these components being "coupled" as claimed. The claims use generic computer elements in a conventional way to implement the abstract idea. Absent an inventive concept, claims 5-8 and 13-16 are ineligible and therefore invalid.

### D. The Allegations in Micro-Gaming's Complaint Do Not Preclude Dismissal.

"Conclusory allegations, or those 'wholly divorced' from the claims or the

specification, cannot defeat a motion to dismiss." *AI Visualize*, 97 F.4th at 1380 (internal citations omitted). The Complaint alleges that the claims "resolve technical problems related to micro-betting and location-based wagering," but fails to identify any specific ***technical*** problem that is solved. Dkt. 1, ¶ 17. Making bets available "after a macro-event starts" is not a solution to a technical problem. *Id.*; *see also Beteiro*, 104 F.4th at 1357 ("'[T]he issue of remote gambling being uncommon in 2002 was not a technical problem, nor do the Asserted Claims' invocation of technology developed by others constitute a solution.'"). Each claim lacks the specificity that might "confine[] the claim to a particular solution to an identified problem." *Affinity Labs*, 838 F.3d at 1269. As such, Micro-Gaming's assertions are "wholly divorced from the Asserted Patents." *Beteiro*, 104 F.4th at 1358.

Micro-Gaming's conclusory allegations that the claims "recite inventive concepts" are entitled to no weight. Dkt. 1, ¶ 18; *see Int'l Bus. Machs.*, 50 F.4th at 1379 (the court need not accept "conclusory allegations of inventiveness"). Further, Micro-Gaming's reliance on the prosecution history (Dkt. 1, ¶¶ 22-29) is misplaced, because a patent examiner's consideration of § 101 does not shield the patent's claims from Article III review for eligibility. *See Beteiro*, 104 F.4th at 1359.

## III.  Conclusion

All claims of the Asserted Patents are ineligible for the reasons herein. The Court should grant DK's motion and dismiss the Complaint with prejudice.

Dated: August 8, 2025                    Respectfully submitted,

_/s/ Melissa E. Flax_
James E. Cecchi
Melissa E. Flax
CARELLA, BYRNE, CECCHI,
  OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
jcecchi@carellabyrne.com
mflax@carellabyrne.com

G. Hopkins Guy III *(pro hac vice)*
BAKER BOTTS L.L.P.
1001 Page Mill Road Building One, Suite 200
Palo Alto, CA 94304-1007
(650) 739-7500

Clarke W. Stavinoha *(pro hac vice)*
BAKER BOTTS L.L.P.
2001 Ross Ave
Suite 900
Dallas, TX 75201
(214) 953-6484

Jamie R. Lynn *(pro hac vice)*
Thomas C. Martin *(pro hac vice)*
Michael Kachmarik *(pro hac vice)*
BAKER BOTTS L.L.P.
700 K St. N.W.
Washington, D.C. 20001
(202) 639-7786

## **Attachment List**

| Attachment | Description |
|:---:|:---|
| 1 | Claim Groups and Associated Abstract Ideas |
| 2 | State of New Jersey 1976 General Election |

# ATTACHMENT 1

| Grouping | Representative Claim | Abstract Idea |
|---|---|---|
| Claims 1-18 of '679 Patent | Claim 1 of '679 Patent | authorizing access to an online micro-betting wagering service based on the location of a mobile device that invoked the wagering service and an associated jurisdiction |
| Claims 1-11 of '244 Patent | Claim 1 of '244 Patent | (1) authorizing access to an online micro-betting wagering service based on the location of a mobile device and (2) processing or offering an additional micro-bet based on processing a test to determine whether a user selected a micro-bet |
| Claims 1-20 of '311 Patent | Claim 1 of '311 Patent | analyzing and providing information about a potential micro-bet and receiving a micro-bet from an authenticated remote device |
| Claims 1-20 of '231 Patent and Claims 1 and 9 of '392 Patent | Claim 1 of '231 Patent | configuring a designated control function for managing randomized micro-bets to determine when a micro-bet is available or closed to bettors |
| Claims 2-4 and 10-12 of '392 Patent | Claim 10 of '392 Patent | displaying a micro-betting GUI for placing and managing randomized micro-bets on one screen and displaying, on another screen, video of the macro-event the micro-bets are based on |
| Claims 5-8 and 13-16 of '392 Patent | Claim 13 of '392 Patent | enabling a plurality of players to meet online and place micro-bets on a selected macro event |

# ATTACHMENT 2

# STATE OF NEW JERSEY

---

# *Results*

*of the*

# *General Election*

# *Held November 2, 1976*

for the Office of
**PRESIDENT AND VICE-PRESIDENT**
**UNITED STATES SENATOR**
**FIFTEEN MEMBERS OF THE HOUSE OF REPRESENTATIVES**
**AND**
**SEVEN PUBLIC QUESTIONS**

J. Edward Crabiel
Secretary of State

Available at
https://www.nj.gov/state/elections/election-information-results.shtml
https://www.nj.gov/state/elections/assets/pdf/election-results/1920-1970//1976-general-election.pdf

| GENERAL ELECTION<br>Table Showing Total Number Registered<br>With Percentages of Ballots Cast | Total Number of Persons Entitled to Vote at the General Election | Total Number of Ballots Cast at General Election | Percentage of ballots cast at General Election | Election Districts |
|---|---|---|---|---|
| 1952—President and Vice-President, U.S. Senator and Congress | 2,744,165 | 2,435,613 | 89% | 3,850 |
| 1953—Governor | 2,658,666 | 1,866,078 | 70% | 3,969 |
| 1954—U.S. Senator and Congress | 2,635,441 | 1,859,814 | 71% | 3,992 |
| 1955—No National Officers | 2,639,476 | 1,617,758 | 61% | 4,071 |
| 1956—President and Vice-President and Congress | 2,846,794 | 2,493,774 | 88% | 4,160 |
| 1957—Governor | 2,790,973 | 2,056,451 | 74% | 4,213 |
| 1958—U.S. Senator and Congress | 2,774,295 | 1,986,880 | 72% | 4,184 |
| 1959—No National Officers | 2,779,361 | 1,962,022 | 71% | 4,224 |
| 1960—President and Vice-President, U.S. Senator and Congress | 3,073,894 | 2,799,095 | 91% | 4,284 |
| 1961—Governor | 3,013,718 | 2,207,931 | 73.3% | 4,395 |
| 1962—Congress | 2,977,333 | 2,018,321 | 67.8% | 4,461 |
| 1963—No National Officers | 2,984,998 | 2,077,695 | 69.6% | 4,533 |
| 1964—President and Vice-President, U.S. Senator and Congress | 3,253,603 | 2,879,201 | 88.5% | 4,603 |
| 1965—Governor | 3,151,599 | 2,293,876 | 72.7% | 4,753 |
| 1966—U.S. Senator and Congress | 3,117,575 | 2,200,177 | 70.5% | 4,817 |
| 1967—State Senate and General Assembly | 3,091,769 | 1,992,273 | 64.4% | 4,907 |
| 1968—President and Vice-President and Congress | 3,310,043 | 2,873,489 | 86.8% | 4,947 |
| 1969—Governor and General Assembly | 3,239,374 | 2,404,056 | 74.2% | 5,081 |
| 1970—U.S. Senator and Congress | 3,167,532 | 2,209,298 | 69.7% | 5,161 |
| 1971—State Senate and General Assembly | 3,334,361 | 2,062,586 | 61.8% | 5,174 |
| 1972—President and Vice-President, U.S. Senator and Congress | 3,672,606 | 3,030,496 | 82.5% | 5,212 |
| 1973—Governor, State Senate and General Assembly | 3,541,809 | 2,175,184 | 61.4% | 5,374 |
| 1974—Congress | 3,502,175 | 2,183,962 | 62.3% | 5,461 |
| 1975—General Assembly | 3,490,370 | 2,000,165 | 57.3% | 5,509 |
| 1976—President and Vice-President, U.S. Senator and Congress | 3,769,588 | 3,037,151 | 81% | 5,569 |

## Total Number of Registered Voters, Ballots Cast, Ballots Rejected, Percentage of Ballots Cast and the Total Number of Election Districts in New Jersey

| COUNTIES IN STATE | Total Number of Registered Voters | Total Number of Ballots Cast | Total Number of Ballots Rejected | Percentage of Ballots Cast | Total Number of Election Districts |
|---|---|---|---|---|---|
| Atlantic | 101,689 | 83,687 | 535 | 82% | 167 |
| Bergen | 505,621 | 429,913 | 0 | 85% | 545 |
| Burlington | 154,004 | 124,024 | 0 | 81% | 290 |
| Camden | 265,722 | 199,899 | 57 | 75% | 358 |
| Cape May | 45,510 | 35,187 | 11 | 77% | 80 |
| Cumberland | 63,011 | 50,260 | 62 | 80% | 113 |
| Essex | 408,238 | 312,921 | 0 | 77% | 592 |
| Gloucester | 97,534 | 78,987 | 183 | 81% | 182 |
| Hudson | 272,295 | 215,890 | 0 | 79% | 408 |
| Hunterdon | 39,478 | 32,174 | 45 | 81% | 63 |
| Mercer | 164,210 | 135,532 | 79 | 83% | 271 |
| Middlesex | 300,093 | 237,926 | 0 | 79% | 474 |
| Monmouth | 251,750 | 207,423 | 494 | 82% | 378 |
| Morris | 204,282 | 166,722 | 21 | 82% | 314 |
| Ocean | 165,673 | 138,481 | 0 | 84% | 200 |
| Passaic | 212,468 | 168,208 | 0 | 79% | 262 |
| Salem | 34,033 | 26,106 | 0 | 77% | 73 |
| Somerset | 112,166 | 90,527 | 0 | 81% | 190 |
| Sussex | 47,375 | 39,977 | 0 | 84% | 73 |
| Union | 286,216 | 232,224 | 0 | 81% | 455 |
| Warren | 38,190 | 31,083 | 0 | 81% | 81 |
| Total | 3,769,558 | 3,037,151 | 1,487 | 81% | 5,569 |

## VOTES CAST FOR PRESIDENT AND VICE-PRESIDENT OF THE UNITED STATES

| Counties in State | Gerald R. Ford and Robert Dole Republican Party | Jimmy Carter and Walter Mondale Democratic Party | Eugene J. McCarthy and Nancy Tate Wood Independent | Roger L. MacBride and David P. Bergland Libertarian Party | Lester Maddox and Edmund O. Matzal The American Party | Julius Levin and Constance Blomen Socialist Labor Party | Gus Hall and Jarvis Tyner Communist Party | Lyndon H. LaRouche and Wayne Evans Labor Party | Peter Camejo and Willie Mae Reid Socialist Workers Party | Margaret Wright and Benjamin Spock People's Party | Benjamin C. Bubar and Earl F. Dodge National Prohibition Party | Frank P. Zeidler and J. Quinn Brisben Socialist Party |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Atlantic | 36,733 | 41,965 | 821 | 195 | 214 | 40 | 49 | 490 | 18 | 46 | 28 | 31 |
| Bergen | 287,331 | 180,738 | 4,317 | 1,119 | 400 | 200 | 238 | 67 | 140 | 168 | 76 | 59 |
| Burlington | 60,960 | 63,309 | 1,742 | 264 | 290 | 32 | 35 | 56 | 29 | 48 | 47 | 8 |
| Camden | 82,801 | 108,854 | 2,531 | 533 | 378 | 111 | 78 | 118 | 108 | 46 | 15 | 38 |
| Cape May | 19,498 | 16,489 | 371 | 124 | 110 | 7 | 14 | 11 | 10 | 10 | 17 | 6 |
| Cumberland | 20,535 | 29,165 | 368 | 66 | 96 | 6 | 5 | 17 | 3 | 10 | 10 | 6 |
| Essex | 133,911 | 174,434 | 3,191 | 415 | 2,970 | 51 | 271 | 98 | 249 | 88 | 96 | 38 |
| Gloucester | 34,888 | 38,726 | 1,161 | 154 | 234 | 19 | 13 | 18 | 33 | 40 | 7 | 9 |
| Hudson | 92,636 | 116,241 | 2,548 | 230 | 336 | 44 | 272 | 58 | 147 | 122 | 57 | 39 |
| Hunterdon | 19,616 | 12,592 | 521 | 101 | 86 | 37 | 10 | 9 | 11 | 6 | 8 | 3 |
| Mercer | 58,453 | 69,621 | 1,926 | 350 | 197 | 87 | 94 | 66 | 47 | 37 | 12 | 16 |
| Middlesex | 113,539 | 122,859 | 2,245 | 1,173 | 476 | 223 | 115 | 206 | 60 | 49 | 29 | 26 |
| Monmouth | 110,104 | 88,956 | 2,121 | 730 | 272 | 46 | 94 | 58 | 60 | 88 | 33 | 51 |
| Morris | 105,921 | 63,749 | 1,648 | 448 | 265 | 90 | 69 | 48 | 55 | 91 | 10 | 23 |
| Ocean | 77,875 | 56,413 | 1,322 | 700 | 239 | 2,458 | 22 | 39 | 19 | 30 | 16 | 16 |
| Passaic | 85,102 | 76,194 | 1,475 | 286 | 360 | 3 | 79 | 102 | 56 | 42 | 39 | 33 |
| Salem | 11,639 | 12,826 | 319 | 40 | 78 | 38 | 34 | 9 | 11 | 9 | 5 | 4 |
| Somerset | 51,260 | 36,258 | 1,081 | 706 | 169 | 37 | 55 | 43 | 24 | 27 | 11 | 19 |
| Sussex | 23,613 | 14,759 | 541 | 100 | 412 | 151 | 17 | 16 | 10 | 15 | 7 | 2 |
| Union | 118,019 | 106,267 | 2,086 | 1,655 | 349 | 3 | 91 | 111 | 53 | 54 | 26 | 40 |
| Warren | 15,254 | 14,238 | 382 | 60 | 85 | 3 | 7 | 10 | 41 | 18 | 5 | 2 |
| Total | 1,509,688 | 1,444,653 | 32,717 | 9,449 | 7,716 | 3,686 | 1,662 | 1,650 | 1,184 | 1,044 | 554 | 469 |

## VOTES CAST FOR THE OFFICE OF U.S. SENATOR

| COUNTIES IN STATE | Harrison A. Williams, Jr. Democrat | David F. Norcross Republican | Hannibal Cundari Libertarian Party | Bernardo S. Doganiero Socialist Labor Party | Leif Johnson Labor Party |
|---|---|---|---|---|---|
| Atlantic | 43,769 | 25,500 | 260 | 163 | 729 |
| Bergen | 226,964 | 163,830 | 3,748 | 1,215 | 333 |
| Burlington | 67,404 | 49,573 | 292 | 208 | 137 |
| Camden | 110,639 | 62,876 | 821 | 717 | 458 |
| Cape May | 17,641 | 13,839 | 73 | 35 | 82 |
| Cumberland | 30,578 | 15,761 | 82 | 42 | 58 |
| Essex | 194,533 | 87,771 | 3,436 | 592 | 640 |
| Gloucester | 45,772 | 26,533 | 249 | 316 | 197 |
| Hudson | 132,508 | 61,135 | 1,115 | 645 | 1,061 |
| Hunterdon | 15,520 | 14,782 | 139 | 31 | 32 |
| Mercer | 77,959 | 40,883 | 639 | 300 | 281 |
| Middlesex | 143,452 | 74,841 | 1,650 | 545 | 714 |
| Monmouth | 112,687 | 73,979 | 1,428 | 307 | 211 |
| Morris | 79,546 | 76,127 | 1,076 | 361 | 216 |
| Ocean | 66,317 | 58,525 | 1,047 | 332 | 272 |
| Passaic | 88,218 | 56,409 | 439 | 2,348 | 295 |
| Salem | 14,853 | 8,847 | 58 | 77 | 71 |
| Somerset | 44,665 | 36,740 | 958 | 200 | 234 |
| Sussex | 19,546 | 18,032 | 213 | 108 | 167 |
| Union | 131,033 | 77,404 | 2,086 | 528 | 357 |
| Warren | 17,536 | 11,118 | 98 | 115 | 105 |
| Total | 1,681,140 | 1,054,508 | 19,907 | 9,185 | 6,650 |

# MEMBERS OF THE HOUSE OF REPRESENTATIVES

## FIRST CONGRESSIONAL DISTRICT
### Gloucester—Camden (part)

| Names of Candidates | Party or Designation | Gloucester | (part) Camden | | Total |
|---|---|---|---|---|---|
| James J. Florio | Democratic | 52,227 | 84,397 | ..... | 136,624 |
| Joseph I. McCullough, Jr. | Republican | 22,964 | 33,399 | ..... | 56,363 |
| Vernon A. Smith | Libertarian Party | 449 | 351 | ..... | 800 |
| Thomas C. Sloan | New Majority Party | 641 | 143 | ..... | 784 |
| Robert Bowen | Labor Party | 142 | 185 | ..... | 327 |

## SECOND CONGRESSIONAL DISTRICT
### Atlantic—Cape May—Cumberland—Burlington (part)—Ocean (part)—Salem

| | | Atlantic | Cape May | Cumberland | (part) Burlington | (part) Ocean | Salem | Total |
|---|---|---|---|---|---|---|---|---|
| William J. Hughes | Democratic | 48,799 | 21,386 | 28,872 | 544 | 25,866 | 16,286 | 141,753 |
| James R. Hurley | Republican | 23,246 | 12,167 | 19,485 | 473 | 24,756 | 7,788 | 87,915 |

## THIRD CONGRESSIONAL DISTRICT
### Monmouth (part)—Ocean (part)

| | | (part) Monmouth | (part) Ocean | | Total |
|---|---|---|---|---|---|
| James J. Howard | Democratic | 113,965 | 13,199 | ..... | 127,164 |
| Ralph A. Siciliano | Republican | 65,648 | 10,286 | ..... | 75,934 |
| Walter M. Swirsky | Libertarian Party | 1,431 | 210 | ..... | 1,641 |

## FOURTH CONGRESSIONAL DISTRICT
### Burlington (part)—Mercer (part)—Middlesex (part)—Monmouth (part)

| | | (part) Burlington | (part) Mercer | (part) Middlesex | (part) Monmouth | Total |
|---|---|---|---|---|---|---|
| Frank Thompson, Jr. | Democratic | 15,692 | 60,442 | 30,048 | 7,099 | 113,281 |
| Joseph S. Indyk | Republican | 7,131 | 22,404 | 21,296 | 3,958 | 54,789 |
| John Valjean Mahalchik | Regular Democracy Party | 343 | 869 | 181 | 38 | 1,431 |
| Jack Moyers | Libertarian Party | 43 | 407 | 361 | 135 | 946 |
| Elliot Greenspan | Labor Party | 31 | 204 | 166 | 20 | 421 |

## FIFTH CONGRESSIONAL DISTRICT
### Somerset—Essex (part)—Mercer (part)—Middlesex (part)—Morris (part)

| | | Somerset | (part) Essex | (part) Mercer | (part) Middlesex | (part) Morris | Total |
|---|---|---|---|---|---|---|---|
| Millicent H. Fenwick | Republican | 53,995 | 17,073 | 10,668 | 4,243 | 51,824 | 137,803 |
| Frank R. Nero | Democratic | 28,985 | 7,562 | 4,357 | 3,498 | 20,196 | 64,598 |
| Jane T. Rehmke | Libertarian Party | 840 | 193 | 146 | 46 | 498 | 1,723 |
| John Giammarco | Pro-Life | 744 | 87 | 82 | 83 | 487 | 1,483 |
| Joseph R. Viola, Jr. | Restoration Party | 299 | 32 | 12 | 17 | 139 | 499 |

## SIXTH CONGRESSIONAL DISTRICT
### Burlington (part)—Camden (part)—Ocean (part)

| | | (part) Burlington | (part) Camden | (part) Ocean | Total |
|---|---|---|---|---|---|
| Edwin B. Forsythe | Republican | 57,163 | 37,635 | 31,122 | 125,920 |
| Catherine A. Costa | Democratic | 38,853 | 26,389 | 19,811 | 85,053 |
| Richard D. Amber | The American Party | 617 | 263 | 274 | 1,154 |
| Samuel E. Brown | Libertarian Party | 165 | 316 | 535 | 1,016 |
| Joseph J. Byrne | Independent | 360 | 141 | 432 | 933 |
| Marc David Silverstein | Individual Needs Center | 77 | 97 | 54 | 228 |

## SEVENTH CONGRESSIONAL DISTRICT
### Bergen (Part)

| | | (part) Bergen | | | Total |
|---|---|---|---|---|---|
| Andrew Maguire | Democratic | 120,526 | ..... | ..... | 120,526 |
| James J. Sheehan | Republican | 92,624 | ..... | ..... | 92,624 |

## EIGHTH CONGRESSIONAL DISTRICT
### Bergen (part)—Passaic (part)

| | | (part) Bergen | (part) Passaic | | Total |
|---|---|---|---|---|---|
| Robert A. Roe | Democratic | 9,803 | 99,038 | ..... | 108,841 |
| Bessie Doty | Republican | 3,848 | 40,927 | ..... | 44,775 |
| Gilbert G. Doll | Libertarian Party | 146 | 434 | ..... | 580 |

## NINTH CONGRESSIONAL DISTRICT
### Bergen (part)—Hudson (part)

| Names of Candidates | Party or Designation | (part) Bergen | (part) Hudson | | Total |
|---|---|---|---|---|---|
| Harold C. Hollenbeck | Republican | 89,218 | 18,236 | . . . . . . | 107,454 |
| Henry Helstoski | Democratic | 69,702 | 20,021 | . . . . . . | 89,723 |
| Herbert H. Shaw | Politicians are Crooks | 1,257 | 557 | . . . . . . | 1,814 |
| Frank J. Primich | Libertarian Party | 1,210 | 549 | . . . . . . | 1,759 |
| James J. Terlizzi, Sr. | Independent Taxpayer's Watchdog | 902 | 692 | . . . . . . | 1,594 |

## TENTH CONGRESSIONAL DISTRICT
### Essex (part)—Hudson (part)

| | | (part) Essex | (part) Hudson | | Total |
|---|---|---|---|---|---|
| Peter W. Rodino, Jr. | Democratic | 84,300 | 3,945 | . . . . . . | 88,245 |
| Tony Grandison | Republican | 16,538 | 591 | . . . . . . | 17,129 |
| Kathleen A. McAdam | Libertarian Party | 837 | 25 | . . . . . . | 862 |
| Lawrence Stewart | Socialist Workers Party | 320 | 10 | . . . . . . | 330 |
| Charles Mack | Labor Party | 189 | 20 | . . . . . . | 209 |

## ELEVENTH CONGRESSIONAL DISTRICT
### Bergen (part)—Essex (part)—Passaic (part)—Union (part)

| | | (part) Bergen | (part) Essex | (part) Passaic | (part) Union | Total |
|---|---|---|---|---|---|---|
| Joseph G. Minish | Democratic | 5,040 | 111,564 | 5,896 | 6,526 | 129,026 |
| Charles A. Poekel, Jr. | Republican | 2,708 | 50,559 | 3,952 | 2,178 | 59,397 |
| Warren T. Kupchik | Libertarian Party | 60 | 1,562 | 44 | 83 | 1,749 |
| Joseph A. Rogers | Jobs, Equality, Peace | 26 | 551 | 21 | 38 | 636 |

## TWELFTH CONGRESSIONAL DISTRICT
### Union (part)

| | | (part) Union | | | Total |
|---|---|---|---|---|---|
| Matthew J. Rinaldo | Republican | 136,973 | . . . . . . | . . . . . . | 136,973 |
| Richard A. Buggelli | Democratic | 49,189 | . . . . . . | . . . . . . | 49,189 |
| Paul M. Geyer | American Party | 642 | . . . . . . | . . . . . . | 642 |
| Vincent Miskell | Labor Party | 478 | . . . . . . | . . . . . . | 478 |

## THIRTEENTH CONGRESSIONAL DISTRICT
### Hunterdon—Sussex—Warren—Mercer (part)—Morris (part)

| | | Hunterdon | Sussex | Warren | (part) Mercer | (part) Morris | Total |
|---|---|---|---|---|---|---|---|
| Helen S. Meyner | Democratic | 14,830 | 18,236 | 16,652 | 12,138 | 43,435 | 105,291 |
| William E. Schluter | Republican | 16,154 | 18,902 | 12,151 | 11,328 | 41,515 | 100,050 |
| F. Edward De Mott | Independent | 276 | 960 | 350 | 75 | 499 | 2,160 |
| Joseph Mayer | Consumer Action Party | 169 | 555 | 435 | 56 | 335 | 1,550 |

## FOURTEENTH CONGRESSIONAL DISTRICT
### Hudson (part)

| | | (part) Hudson | | | Total |
|---|---|---|---|---|---|
| Joseph A. Le Fante | Democratic | 73,174 | . . . . . | . . . . . | 73,174 |
| Anthony Louis Campeni | Republican | 66,319 | . . . . . | . . . . . | 66,319 |
| Kenneth C. McCarthy | Individual Americans Independence | 3,979 | . . . . . | . . . . . | 3,979 |
| David L. Jones, Jr. | Bring Us Together | 1,969 | . . . . . | . . . . . | 1,969 |
| Stuart Bronn | Labor Party | 452 | . . . . . | . . . . . | 452 |
| Robert Ryley | Libertarian Party | 446 | . . . . . | . . . . . | 446 |
| Edward W. Bergonzi | Workers Party | 429 | . . . . . | . . . . . | 429 |

## FIFTEENTH CONGRESSIONAL DISTRICT
### Middlesex (part)—Union (part)

| | | (part) Middlesex | (part) Union | | Total |
|---|---|---|---|---|---|
| Edward J. Patten | Democratic | 94,630 | 11,540 | . . . . . | 106,170 |
| Charles W. Wiley | Republican | 49,856 | 4,631 | . . . . . | 54,487 |
| Dennis F. Adams, Sr. | Silent Majority | 14,088 | 455 | . . . . . | 14,543 |
| Michael Klein | People's Independent Party | 3,829 | 87 | . . . . . | 3,916 |
| Bruce E. Todd | Labor Party | 643 | 77 | . . . . . | 720 |

Case 2:11-cv-03582-KM-CLW Document 32-4 Filed 02/06/35 Page 59 of 60 PageID: 774

## PUBLIC QUESTION NO. 1

### CONSTITUTIONAL AMENDMENT CASINOS IN ATLANTIC CITY FOR THE BENEFIT OF SENIOR CITIZENS AND DISABLED RESIDENTS OF THE STATE

Shall the Constitution be amended, as agreed to by the Legislature, to authorize the Legislature to establish and *regulate* gambling casinos in Atlantic City, with the State's *revenues* therefrom being *applied solely* to reduce property taxes, rentals, and telephone, gas, electric and municipal utilities charges of eligible senior citizens and disabled residents of the State?

| COUNTIES IN STATE | YES | NO |
|---|---|---|
| Atlantic | 61,719 | 13,930 |
| Bergen | 221,472 | 173,286 |
| Burlington | 63,024 | 56,964 |
| Camden | 104,379 | 77,438 |
| Cape May | 18,225 | 15,684 |
| Cumberland | 26,020 | 22,745 |
| Essex | 158,610 | 93,343 |
| Gloucester | 41,145 | 35,094 |
| Hudson | 119,788 | 55,525 |
| Hunterdon | 13,798 | 17,326 |
| Mercer | 68,333 | 52,611 |
| Middlesex | 117,102 | 96,699 |
| Monmouth | 102,117 | 90,034 |
| Morris | 84,583 | 78,695 |
| Ocean | 64,432 | 61,097 |
| Passaic | 78,170 | 57,644 |
| Salem | 10,461 | 12,938 |
| Somerset | 37,765 | 43,250 |
| Sussex | 18,795 | 19,295 |
| Union | 111,534 | 92,405 |
| Warren | 13,777 | 14,796 |
| Total | 1,535,249 | 1,180,799 |

## PUBLIC QUESTION NO. 2

### CONSTITUTIONAL AMENDMENT RELATING TO HOMESTEAD REBATES OR CREDITS FOR SENIOR CITIZENS, DISABLED PERSONS OR THEIR SURVIVING SPOUSES

Shall the amendment to Article VIII, Section I, paragraph 5 of the Constitution, agreed to by the Legislature providing a differential homestead rebate or credit to senior citizens, disabled citizens or their surviving spouses be adopted?

| COUNTIES IN STATE | YES | NO |
|---|---|---|
| Atlantic | 54,949 | 11,211 |
| Bergen | 299,141 | 72,967 |
| Burlington | 90,796 | 24,237 |
| Camden | 135,907 | 33,954 |
| Cape May | 24,738 | 6,972 |
| Cumberland | 36,662 | 9,871 |
| Essex | 179,436 | 44,308 |
| Gloucester | 54,645 | 17,869 |
| Hudson | 122,681 | 36,116 |
| Hunterdon | 23,054 | 7,313 |
| Mercer | 92,161 | 20,489 |
| Middlesex | 160,026 | 44,632 |
| Monmouth | 137,676 | 42,976 |
| Morris | 121,268 | 35,593 |
| Ocean | 86,504 | 32,891 |
| Passaic | 90,685 | 34,099 |
| Salem | 16,764 | 5,738 |
| Somerset | 60,998 | 18,316 |
| Sussex | 28,886 | 8,514 |
| Union | 149,908 | 41,547 |
| Warren | 22,927 | 4,974 |
| Total | 1,989,812 | 554,587 |

## PUBLIC QUESTION NO. 3

### MORTGAGE ASSISTANCE BOND ISSUE

Should the "New Jersey Mortgage Assistance Bond Act of 1976," which authorizes the State to issue bonds in the amount of $25 million for mortgage assistance and to spur construction, rehabilitation, and maintenance of housing; to enable such housing to be occupied by senior citizens and families of low and moderate income; to provide the ways and means to pay the interest of said debt and also to pay and discharge the principal thereof, be approved?

| COUNTIES IN STATE | YES | NO |
|---|---|---|
| Atlantic | 39,702 | 22,622 |
| Bergen | 197,618 | 157,325 |
| Burlington | 57,744 | 52,535 |
| Camden | 86,316 | 76,053 |
| Cape May | 15,877 | 13,443 |
| Cumberland | 19,776 | 24,690 |
| Essex | 123,677 | 86,134 |
| Gloucester | 29,121 | 39,424 |
| Hudson | 84,219 | 63,414 |
| Hunterdon | 12,849 | 16,743 |
| Mercer | 61,087 | 45,650 |
| Middlesex | 100,716 | 91,655 |
| Monmouth | 91,621 | 82,058 |
| Morris | 73,697 | 77,397 |
| Ocean | 57,974 | 55,549 |
| Passaic | 54,933 | 63,389 |
| Salem | 8,879 | 13,377 |
| Somerset | 36,731 | 38,426 |
| Sussex | 15,570 | 21,249 |
| Union | 93,350 | 87,668 |
| Warren | 13,691 | 13,412 |
| Total | 1,275,048 | 1,142,213 |

## PUBLIC QUESTION NO. 4

### CLEAN WATERS BOND ISSUE

Should the "New Jersey Clean Waters Bond Act of 1976" which authorizes the State to issue bonds in the amount of $120,000,000.00 for the purposes of researching, planning, acquiring, developing, constructing, and maintaining water supply, water pollution and sewerage treatment facilities, providing the ways and means to pay the interest of such debt and also to pay and discharge the principal thereof, be approved?

| COUNTIES IN STATE | YES | NO |
|---|---|---|
| Atlantic | 42,361 | 19,433 |
| Bergen | 242,297 | 117,375 |
| Burlington | 70,362 | 37,750 |
| Camden | 99,447 | 63,201 |
| Cape May | 19,287 | 9,554 |
| Cumberland | 21,610 | 22,584 |
| Essex | 148,359 | 61,803 |
| Gloucester | 39,117 | 30,358 |
| Hudson | 96,632 | 51,827 |
| Hunterdon | 14,793 | 14,806 |
| Mercer | 72,446 | 35,157 |
| Middlesex | 123,749 | 70,057 |
| Monmouth | 113,538 | 61,447 |
| Morris | 91,628 | 60,307 |
| Ocean | 74,367 | 39,666 |
| Passaic | 65,992 | 51,877 |
| Salem | 10,223 | 11,939 |
| Somerset | 49,159 | 27,993 |
| Sussex | 17,877 | 18,962 |
| Union | 116,015 | 65,802 |
| Warren | 13,978 | 13,050 |
| Total | 1,543,237 | 884,948 |

Case 3:12-cv-06380... Document ... Filed 12/15 ... Page 60 ... PageID: 775

## PUBLIC QUESTION NO. 5

### INSTITUTIONS CONSTRUCTION BOND ISSUE

Should the "New Jersey Institutions Construction Bond Act of 1976" which authorizes the State to issue bonds in the amount of $80,000,000.00 for the renovation and improvement of State schools for the mentally retarded and hospitals for the mentally ill; the construction of new correctional facilities to accommodate the increase in the inmate population occurring as a result of more strict sentencing and speedier trials; to provide for the expansion of community mental health facilities; and to provide the means to pay the principal and interest on these bonds, be approved?

| COUNTIES IN STATE | YES | NO |
|---|---|---|
| Atlantic | 40,853 | 20,999 |
| Bergen | 206,460 | 141,740 |
| Burlington | 51,573 | 42,931 |
| Camden | 89,893 | 67,928 |
| Cape May | 12,141 | 11,656 |
| Cumberland | 21,564 | 22,059 |
| Essex | 127,423 | 79,676 |
| Gloucester | 30,563 | 36,596 |
| Hudson | 86,565 | 57,603 |
| Hunterdon | 13,277 | 15,995 |
| Mercer | 63,632 | 40,906 |
| Middlesex | 102,793 | 86,037 |
| Monmouth | 96,955 | 73,254 |
| Morris | 79,865 | 69,129 |
| Ocean | 63,064 | 47,594 |
| Passaic | 55,903 | 61,178 |
| Salem | 9,812 | 12,136 |
| Somerset | 37,979 | 36,391 |
| Sussex | 15,998 | 20,434 |
| Union | 95,937 | 80,726 |
| Warren | 12,802 | 13,700 |
| Total | 1,315,052 | 1,038,668 |

## PUBLIC QUESTION NO. 6

### DEDICATION OF PERSONAL INCOME TAX NET RECEIPTS TO BE USED EXCLUSIVELY TO OFFSET OR REDUCE PROPERTY TAXES

Shall the amendment agreed to by the Legislature, to amend Article VIII, Section I of the Constitution of the State of New Jersey by adding a new paragraph to provide that the entire net receipts of any State tax levied on personal incomes of individuals, estates and trusts of this State shall be annually appropriated to the several counties, municipalities and school districts of this State exclusively for the purpose of reducing or offsetting property taxes, be adopted?

| COUNTIES IN STATE | YES | NO |
|---|---|---|
| Atlantic | 45,672 | 15,492 |
| Bergen | 237,603 | 107,544 |
| Burlington | 82,102 | 28,730 |
| Camden | 118,993 | 40,822 |
| Cape May | 22,267 | 7,893 |
| Cumberland | 31,597 | 12,752 |
| Essex | 141,407 | 66,220 |
| Gloucester | 52,809 | 18,267 |
| Hudson | 102,167 | 42,828 |
| Hunterdon | 20,354 | 8,133 |
| Mercer | 75,480 | 26,483 |
| Middlesex | 130,189 | 62,002 |
| Monmouth | 130,282 | 43,363 |
| Morris | 103,676 | 43,485 |
| Ocean | 84,397 | 28,118 |
| Passaic | 71,913 | 44,245 |
| Salem | 16,244 | 6,474 |
| Somerset | 50,739 | 24,863 |
| Sussex | 28,910 | 8,242 |
| Union | 119,935 | 60,165 |
| Warren | 21,727 | 5,862 |
| Total | 1,688,463 | 701,983 |

## PUBLIC QUESTION NO. 7

### AMUSEMENT GAMES INCREASE IN VALUE OF PRIZES AND ADMISSION CHARGE

Shall the amendment to the Amusement Games Licensing Law enacted by the Legislature authorizing an increase from $15.00 to $100.00 in the maximum retail value of prizes, and from $0.25 to $0.50 for the privilege of playing amusement games, be approved?

| COUNTIES IN STATE | YES | NO |
|---|---|---|
| Atlantic | 31,392 | 27,140 |
| Bergen | 139,264 | 191,000 |
| Burlington | 39,205 | 69,104 |
| Camden | 60,891 | 91,908 |
| Cape May | 11,492 | 17,398 |
| Cumberland | 15,059 | 27,544 |
| Essex | 85,251 | 104,224 |
| Gloucester | 21,321 | 47,754 |
| Hudson | 59,985 | 71,958 |
| Hunterdon | 10,476 | 17,008 |
| Mercer | 35,896 | 56,802 |
| Middlesex | 66,914 | 112,339 |
| Monmouth | 72,639 | 96,081 |
| Morris | 50,989 | 90,550 |
| Ocean | 45,436 | 63,721 |
| Passaic | 39,559 | 70,257 |
| Salem | 7,162 | 14,839 |
| Somerset | 25,483 | 47,898 |
| Sussex | 12,887 | 22,872 |
| Union | 65,173 | 103,470 |
| Warren | 10,533 | 15,723 |
| Total | 907,007 | 1,359,860 |