**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

---

**MICRO-GAMING VENTURES, LLC**,

Plaintiff,

v.

**DRAFTKINGS, INC.**,

Defendant.

---

Civil Action No. 25-4102 (ZNQ) (JTQ)

**OPINION**

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon a Motion to Dismiss filed by Defendant DraftKings, Inc. ("Defendant" or "DraftKings") on August 8, 2025. (ECF No. 32.) Defendant filed a Brief in support of its Motion. ("Moving Br.," ECF No. 32-1.) Plaintiff Micro-Gaming Ventures, LLC ("Plaintiff" or "MGV") filed an Opposition Brief ("Opp.," ECF No. 35), to which Defendant filed a Reply Brief ("Reply," ECF No. 38).

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will **GRANT** Defendant's Motion.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

This lawsuit concerns the enforcement of five patents that are directed to online sports betting. MGV develops online gaming and wagering solutions that are focused on so-called micro-betting and location-based technologies. ("Compl.," ECF No. 1 ¶ 2.) Micro-betting is a form of online wagering that focuses on small-scale, individual bets on targeted outcomes within a larger

1

event, such as the next play in a sports game or a particular moment in an entertainment event. (*Id.* ¶ 11.)

The patents at issue are U.S. Patents Nos. 8,545,311 ("the '311 patent"), 8,632,392 ("the '392 patent"), 8,734,231 ("the '231 patent"), 11,783,679 ("the '679 patent"), and 12,266,244 ("the '244 patent"). (*Id.* ¶ 8.) The '311, '392, and '231 patents are in a patent family directed to micro-gaming-related wagering innovations, with the '392 and '231 patents being continuations-in-part of the '311 patent. (*Id.* ¶ 9.) The '679 and '244 patents are in a separate patent family directed to location-based wagering technology. (*Id.* ¶¶ 9, 11.)

According to MGV, the inventions disclosed in the '311, '392, '231, '679, and '244 patents provide numerous advantages over the prior art, including by allowing users to know when a micro-bet is available to bettors, which can change in real time from play to play and pitch to pitch. (*Id.* ¶ 15.) Another purported advantage is the ability to randomize the available micro-bets via a computer, which can allegedly prevent cheating and provide a dynamic user experience. (*Id.*)

MGV also alleges that the patented inventions resolve technical problems related to micro-betting and location-based wagering, particularly problems related to the use of managing micro-bets within larger macro-events, providing video playback within online betting services, and authorizing bettors based on their location. (*Id.* ¶ 17.) Prior to these patents, MGV asserts that bets would be available before a macro-event started, but bets would not be available during the game that would allow a bettor to make bets in real time on whether a certain micro-outcome would occur. (*Id.*)

MGV asserts five counts of patent infringement, alleging that DraftKings has and continues to directly infringe at least claim 1 of the '311, '392, '231, '679, and '244 patents by using and

operating a website and mobile-phone app called "DraftKings Sportsbook." (*Id.* ¶¶ 38, 48, 58, 68, 78.)

## II.   <u>SUBJECT MATTER JURISDICTION</u>

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

## III.   <u>LEGAL STANDARD</u>

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 663). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States.*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). In the patent eligibility context, "whether a claim supplies an inventive concept that renders a claim 'significantly more' than an abstract idea to which it is directed is a question of law that may include underlying factual determinations." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d

3

759, 773 (Fed. Cir. 2019). Dismissal is appropriate "when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Id.* at 765.

## IV.    <u>DISCUSSION</u>

### A.    **Whether DraftKings's Proposed Representative Claims Are Representative**

The parties dispute whether DraftKings has properly chosen representative claims for the Court's consideration. "Limiting the analysis of a § 101 challenge to representative claims is proper when the claims at issue are 'substantially similar and linked to the same' ineligible concept." *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1290 (Fed. Cir. 2024) (quoting *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017)). Where representativeness is disputed, however, the patent challenger "bears the initial burden to make a prima facie showing that the group of claims are substantially similar and linked to the same ineligible concept." *Id.* "A claim is not representative simply because it is an independent claim." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). Nor can the patent challenger show representatives in a conclusory and unexplained manner. *See Diogenes Ltd. v. DraftKings, Inc.*, 623 F. Supp. 3d 423, 429–30 (D. Del. 2022); *see also Recentive Analytics, Inc. v. Fox Corp.*, 692 F. Supp. 3d 438, 450 (D. Del. 2023) ("Courts have declined to rule on a § 101 motion to dismiss when the accused infringer failed to meet its burden to show that its choice of representative claim is proper.")

Once the patent challenger makes a prima facie showing of representativeness, "the burden shifts to the patent owner to present non-frivolous arguments as to why the eligibility of the identified representative claim cannot fairly be treated as decisive of the eligibility of all claims in the group." *Mobile Acuity Ltd.*, 110 F.4th at 1290. A patent owner may do this by presenting a meaningful argument for the "distinctive significance" of the relevant claim limitations.

*Berkheimer*, 881 F.3d at 1365 (citing *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1352 (Fed. Cir. 2016)).  If the patent owner presents a non-frivolous argument to demonstrate the "distinctive significance" of the various claims, the burden shifts back to the patent challenger to prove either that: "(i) the representative claim is, in fact, representative, in that any differences among the claims are not material to the eligibility analysis (i.e., the claims are substantially similar and are linked to the same ineligible concept); or (ii) each separate claim (i.e., those not fairly represented by the purported representative claim) is ineligible for patenting." *Mobile Acuity Ltd.*, 110 F4th at 1291.

According to DraftKings, the patents at issue in MGV's complaint can be put into six groups, each with a representative claim.  (Moving Br. at 5.)  Specifically, DraftKings contends that: (1) claim 1 of the '679 patent is representative of claims 1 through 18 of the '679 patent; (2) claim 1 of the '244 patent is representative of claims 1 through 11 of the '244 patent; (3) claim 1 of the '311 patent is representative of claims 1 through 20 of the '311 patent; (4) claim 1 of the '231 patent is representative of claims 1 through 20 of the '231 patents and claims 1 and 9 of the '392 patent; (5) claim 10 of the '392 patent is representative of claims 2 through 4 and 10 through 12 of the '392 patent; and (6) claim 13 of the '392 patent is representative of claims 5 through 8 and 13 through 16 of the '392 patent.  (Moving Br., Attachment 1.)  DraftKings further identifies the abstract idea that each representative claim is directed too.  (*Id.*)

MGV, in its Opposition brief, argues that DraftKings has improperly lumped 85 claims together and oversimplified each of the proposed groups.  (Opp. at 7.)  MGV then goes through each patent and argues why DraftKings's purported representative claims are not actually representative of each of the claims.  The Court will discuss each in turn.

1.      The '679 patent

Beginning with the '679 patent, DraftKings argues that claim 1 is representative of claims 2 through 18.  (Moving Br. at 5–7.)  Claim 1 of the '679 patents states:

> A computer-implemented method for location-based wagering, said method performed by a computer system having one or more processors and memory storing one or more programs for execution by said one or more processors, said method comprising:
>
> invoking an online wagering service via a mobile device, the online wagering service including a micro-betting graphical user interface (GUI) and a control function that sets when a micro-betting opportunity begins and when the micro-betting opportunity ends;
>
> determining a location of said mobile device and a jurisdiction associated with said location; and
>
> authorizing said mobile device access to said online wagering service based on said location and the jurisdiction of said mobile device.

('679 patent at 36:29–44.)   According to DraftKings, claim 1 relates to the abstract idea of "authorizing access to an online micro-betting wagering service based on the location of a mobile device that invoked the wagering service and an associated jurisdiction." (Moving Br., Attachment 1.)  DraftKings then asserts that claims 6, 7, and 15 generically discuss "general" or micro-wagering, that claims 11 and 12 claim conventional hardware to implement the abstract idea, and that claims 2 through 5, 8 through 10, 14, and 16 through 18 claim abstract "determining," "displaying," or "calculating" steps related to the concept of performing wagering activities based on location and jurisdiction.  (Moving Br. at 6.)

In its Opposition, MGV concedes that claim 1 is fairly representative of claim 13, but asserts that the remaining claims address additional technological problems not covered by claim 1.  (Opp. at 7.)  MGV argues that the remaining "claims go beyond claim 1 to recite using real-

6

time user-location information, selective displays of wagering options, and accurate tax disclosures of information through a secured server to comply with laws." (*Id.*)

The Court agrees that claim 1 of the '679 patent is representative of claims 2 through 18 of the '679 patent. None of the additional limitations in those claims present any sort of distinctive significance and are all "substantially similar and linked to the same" abstract idea. *See Mobile Acuity Ltd.*, 110 F.4th at 1290. Indeed, claims 2 through 18 all relate to determining whether a user can make a wager based on their location, and none of them recite a "technological improvement to the function of a computer beyond routine and conventional steps." *Game Play Network, Inc. v. Potent Systems, Inc.*, Civ. No. 23-323, 2024 WL 3226214, at *6 (D. Del. June 28, 2024). Accordingly, claim 1 of the '679 patent will be treated as representative of claims 2 through 18 of the '679 patent.

### 2.    The '244 patent

DraftKings next argues that claim 1 of the '244 patent is representative of claims 2 through 11 of the '244 patent and is directed to two abstract ideas: "(1) authorizing access to an online micro-betting wagering service based on the location of a mobile device and (2) processing or offering an additional micro-bet based on processing a test to determine whether a user selected a micro-bet." (Moving Br., Attachment 1.) In response, MGV asserts that DraftKings has failed to meet its burden of showing representativeness, and that dependent claims 2 through 11 add specific technical constraints and provide technical solutions. (Opp. at 14–15.)

Claim 1 of the '244 patent states:

> 1. A computer-implemented method for location-based wagering, the method performed by a computer system having one or more processors and memory storing one or more programs for execution by the one or more processors, the computer-implemented method comprising:

invoking an online wagering service via a mobile device having a video display screen that supports viewing of a macro-event activity and micro-event gaming data on the video display screen, the online wagering service including a micro-betting graphical user interface (GUI) and a control function that sets when a micro-betting opportunity begins and when the micro-betting opportunity ends;

determining a location of the mobile device;

authorizing the mobile device access to the online wagering service based on the location of the mobile device, wherein the microevent gaming data comprises a micro-bet or a group of micro-bets;

processing a test to determine whether a selection of a microbet or a group of micro-bets is made by a user, wherein, upon determining that the selection of the micro-bet or the group of microbets made, entering and processing the micro-bet or the group of micro-bets via a server, wherein, upon determining that the selection has not been made, offering one or more additional new micro-bets associated with a particular micro-outcome for selection by the user; and

generating a result of the processed micro-bet or the group of micro-bets to the user.

('244 patent at 31:24–32:7.)

The Court agrees that claim 1 of the '244 patent is representative of claims 2 through 11 of the '244 patent. None of the additional limitations in claims 2 through 11 are materially different, at least for purposes of a patentability subject matter analysis, from claim 1. For example, claim 2 merely recites a "computer-implemented method of claim 1 wherein the video display screen comprises a touch screen interface that displays the micro-betting GUI." ('244 patent at 32:8–11.) Similarly, claim 6 states "[t]he computer-implemented method of claim 1 wherein the video display screen displays a picture-in-picture display that enables simultaneous viewing of disparate data including the macro-event activity and the micro-event gaming data." ('244 patent at 32:23–27.) These dependent claims are substantially similar to claim 1 because the additional limitations merely add on generic computer components and are all directed to the same abstract idea: authorizing, processing, or offering a micro-bet based on the user's location.

8

### 3.    The '311 Patent

DraftKings next argues that claim 1 of the '311 patent is representative of claims 2 through 20 of the '311 patent.  According to DraftKings, the '311 patent is directed to the abstract idea of "analyzing and providing information about a potential micro-bet and receiving a micro-bet from an authenticated remote device."  (Moving Br., Attachment 1.)  In its Opposition, MGV concedes that claim 1 is fairly representative of claims 14 and 20.  (Opp. at 18 n.7.)  MGV, however, argues that the remaining dependent claims "recite technical solutions to delayed, unsecured remote betting problems, none of which are generic computer elements or can be accomplished by a simple abstract concept."  (*Id.* at 19.)

Claim 1 of the '311 patent recites:

A method for micro-betting, comprising:

providing a micro-betting system including at least one secure server enabling access by authenticated remote computing devices via a data network;

authenticating a remote computing device via said at least one secure server for access to data from said at least one secure server including information associated with potential future, real life, live macro-events, said data including multiple betting options associated with said potential future, real life, live macro-events;

identifying from said information at least one potential micro-outcome within said at least one potential future real life, live macro-event, said at least one potential micro-outcome comprising a potential real life, live micro-outcome from which betting options can be developed for use in monetary wagering from remote computing devices;

generating multiple betting options including parimutuel betting options needed to make a betting decision with respect to said at least one potential micro-outcome within or as part of said at least one potential future real life, live macro-event, said multiple betting options displayable on a display screen associated with said remote computing device;

9

> providing information about said at least one potential future real life, live macro-event, including said betting options needed to make a betting decision, to said remote computing device for display with real-time video of a live event via said display screen associated with said remote computing device; and
>
> receiving from said remote computing device at least one micro-bet from among said multiple betting options provided to said remote computing device with respect to said at least one potential micro-outcome, wherein said at least one micro-bet comprises a real monetary bet transmitted from said remote computing device for placement at said at least one secure server while in communication with said at least one secure server over said data network.

('311 patent at 17:17–55.)

The Court is satisfied that claim 1 of the '311 patent is representative of claims 2 through 20 of the '311 patent.  The remaining dependent claims simply use generic computer components to further the abstract idea of analyzing and providing information about a potential micro-bet and receiving a micro-bet from an authenticated remote device.  Accordingly, the Court will treat claim 1 as representative.

### 4.    The '231 Patent

DraftKings argues that claim 1 of the '231 patent is fairly representative of claims 2 through 20 of the '231 patent and claims 1 and 9 of the '392 patent.  (Moving Br., Attachment 1.)  According to DraftKings, representative claim 1 of the '231 patent is directed to the abstract idea of "configuring a designated control function for managing randomized micro-bets to determine when a micro-bet is available or closed to bettors."  (*Id.*)  Moreover, DraftKings asserts that the remaining claims simply recite the same abstract idea.  (*Id.* at 27.)  MGV concedes that claim 11 is represented by claim 1, but argues that the remaining claims introduce various technical solutions related to placing bets.  (Opp. at 22.)

Claim 1 of the '231 patent states:

10

> A computer-implemented method for micro-betting, said method comprising:
>
> designating via a computer a control function for managing at least one micro-bet based on at least one micro-event within at least one event said at least one micro-bet comprising a real bet and said at least one micro-event comprising a real event;
>
> configuring via a computer said control function to determine when said at least one micro-bet is available, or open, to at least one and thereafter when said at least one micro-bet has closed to at least one additional better, and
>
> randomizing via a computer, at least one available microbet with respect to said at least one micro-bet.

('231 patent at 22:7–19.)

The Court similarly holds that claim 1 of the '231 patent is fairly representative of claims 2 through 20 of the '231 patent and claims 1 and 9 of the '392 patent. MGV has failed to establish any distinctive significance of the claims, each of which are all generally directed to the abstract idea of determining when a micro-bet is available or closed to bettors.

### 5.    The '392 Patent

DraftKings argues that claim 10 of the '392 patent is representative of claims 2 through 4 and 10 through 12, which it contends is directed to the abstract idea of "displaying a micro-betting GUI for placing and managing randomized micro-bets on one screen and displaying, on another screen, video of the macro-event the micro-bets are based on." (Moving Br., Attachment 1.) DraftKings further asserts that claim 13 is representative of claims 5 through 8 and 13 through 16 and are directed to the same abstract idea of "enabling a plurality of players to meet online and place micro-bets on a selected macro event." (*Id.*) MGV, in its Opposition, concedes that claim 10 is fairly representative of claim 2, and that claim 13 is fairly representative of claim 5. (Moving Br. at 21, 27.) Like the other representative claims, MGV asserts that each of the other dependent claims encompass additional technical solutions. (*Id.* at 22, 24.)

Claim 10 of the '392 patent states:

> A multiple display screen method for the placement of micro-bets, said system comprising:
>
> displaying, via at least one display screen, a micro-betting GUI for placing and managing micro-bets with respect to at least a macro-event and micro-events thereof; and providing at least one other display screen for displaying video of said macro-event; and
>
> randomizing available micro-bets among said micro-bets to prevent cheating.

('392 patent at 19:38–20:2.)

Claim 13 of the '392 patent states:

> A system for online micro-betting, said system comprising:
>
> a processor;
>
> a data bus coupled to said processor; and
>
> a computer-usable medium embodying computer code, said computer-usable medium being coupled to said data bus, said computer program code comprising instructions executable by said processor and configured for:
>
> permitting a plurality of players to meet online with one another and place micro-bets with respect to a particular macro-event, said micro-bets comprising real bets and said particular macro-event comprising a real event;
>
> electronically selecting said particular macro-event;
>
> allowing said plurality of players to select a controller and a control function for controlling and managing said micro-bets placed online by at least one player among said plurality of players; selecting micro-bets to be made available to said plurality of players; and placing at least one micro-bet among said micro-bets online during said particular macro-event until an end point; and randomizing available micro-bets among said micro-bets to prevent cheating.

('392 patent at 20:11–35.)

Upon review of the claims, the Court agrees with DraftKings that claim 10 is representative of claims 2 through 4 and claims 10 through 12, and that claim 13 is fairly representative of claims

12

5 through 8 and 13 through 16.  None of the additional limitations are significantly distinct but instead relate to the same abstract ideas as the representative claims.

## B.        Patent-Eligible Subject Matter

Turning to the merits, DraftKings asserts that none of MGV's patents claim patent-eligible subject matter under 35 U.S.C. § 101.  (Moving Br. at 1.)  Section 101 defines patent-eligible subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."  35 U.S.C. § 101.  The Supreme Court has "long held that this provision contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Intern.*, 573 U.S. 208, 216 (2014) (quoting *Ass'n of Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)).  To evaluate patent-eligibility under Section 101, the Supreme Court has established a two-step framework, commonly referred to as the *Alice/Mayo* test.  At step one, the Court must consider "whether the claims at issue are directed to one of those patent-ineligible concepts." *Id.* at 217.  If they are, the Court will proceed to step two, at which point the Court will "consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Id.*  (citation modified).  The Supreme Court describes "step two of this analysis as a search for an 'inventive concept' –*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* at 217–18 (citation modified).

In following this framework, the Federal Circuit has identified several features that are well-settled indicators of abstractness. *See Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1355 (Fed. Cir. 2024).  First, claims reciting generic steps such as detecting, processing, and analyzing

13

information are abstract.  *Id.*; *see also AI Visualize, Inc. v. Nuance Comc'ns, Inc.*, 97 F.4th 1371, 1378 (Fed. Cir. 2024) ("We have explained that the steps of obtaining, manipulating, and displaying data, particularly when claimed at a high level of generality, are abstract concepts."); *Elec. Power Grp.*, 830 F.3d at 1354 (finding "a process of gathering and analyzing information of a specified content, then displaying the results" abstract); *Intell. Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015) (finding "tailoring content based on the [user's] location" abstract); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (claiming "a computer receiv[ing] and send[ing] information over a network—with no further specification—is not even arguably inventive").

Second, claims that use results-oriented language, with no specificity about how to achieve those results, are typically considered abstract and not patent-eligible.  *See Beteiro, LLC*, 104 F.4th at 1356; *see also Elec. Power Grp.*, 830 F.3d at 1356 ("[T]he essentially result-focused, functional character of claim language has been a frequent feature of claims held ineligible under § 101, especially in the area of using generic computer and network technology to carry out economic transactions."); *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) ("The claim requires the functional results of 'converting,' 'routing,' 'controlling,' 'monitoring,' and 'accumulating records,' but does not sufficiently describe how to achieve these results in a non-abstract way.").

Third, claims that are similar or parallel to earlier cases may be considered abstract.  *See Beteiro, LLC*, 104 F.4th at 1356; *see also Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016) ("[T]he decisional mechanism courts now apply [to Section 101 cases] is to examine earlier cases in which a similar or parallel descriptive nature can be seen.").

Fourth, claims that are analogous to "real-world" ("brick and mortar") activities may also be considered abstract. *See Beteiro, LLC*, 104 F.4th at 1356; *see also Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1314 (Fed. Cir. 2016) (holding that "fundamental . . . practice[s] long prevalent" are abstract ideas); *Yu v. Apple Inc.*, 1 F.4th 1040, 1046 (Fed. Cir. 2021) ("[T]he district court's recognition at the pleadings stage in the context of § 101 of the century-old practice . . . concerns a pertinent fundamental . . . concept[ ] and technological development[ ] [and thus] is well supported by our precedents.") (citation modified).

With these principles in mind, the Court turns to the specific claims at issue in this case.

1.    The '679 Patent

*Alice Step 1*   The Court finds that the '679 patent is directed to the abstract idea of authorizing access to an online wagering service based on the location of a mobile device that invoked the online wagering service. First, claim 1 recites the generic steps of invoking a service, determining a location, and authorizing a service. ('679 patent, 36:34–43.) Second, these generic steps are drafted using "result-focused functional language, containing no specificity about how the purported invention achieves those results." *Beteiro, LLC*, 104 F.4th at 1356. Indeed, there are no details about how to actually invoke the online wagering service, how to determine the location of the mobile device, or how to authorize the online wagering service based on the location. Nor does it matter, as MGV argues, that the '679 patent recites invoking the online wagering service by using a graphical user interface and a control function that determines when the micro-bet begins and ends. (Opp. at 9.) These are nothing more than "generic descriptions of well-known computer components." *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1270 (Fed. Cir. 2016) (holding that terms such as "graphical user interface" and "network based media management system" were routine and generic processing capabilities of computers). Simply describing the user interface, without providing a technical solution, does not render this

15

claim non-abstract.  *See Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359, 1368 (Fed. Cir. 2024).

Moreover, the claims that depend from claim 1 provide no detail as to how the claimed invention achieves these desired results, as MGV argues.  (Opp. at 9.)  According to MGV, dependent claims 2 through 5 explain how to overcome "regulatory obstacles with a location-based micro-betting GUI on a physical device that modifies system behaviors, presents user options in real time, registers the user's actions using the GUI to present micro-bets to a remote server through a secure network, calculates results on a para-mutual basis, and reports results to the remote user." (*Id.*)  But MGV's characterization of its claims are divorced from the claim language itself, and it is well-established that patent "eligibility depends on what is claimed." *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1095 (Fed. Cir. 2019).  Upon review of the claim language, it is clear that none of the dependent claims explain *how* to achieve those results, and like claim 1, are drafted using results-oriented language.  For example, dependent claim 2 is the computer-implemented method of claim 1 that determines whether the online wagering services is allowed based on the user's location.  ('679 patent, 36:44–49.)  But nothing in this claim improves upon any computer-related technology.  Rather, the dependent claims use generic computer elements "as tools and do not claim any improvement in the computer-related technology itself." *Beteiro*, 104 F.4th at 1357.

Third, the location-based betting in claim 1 is closely analogous to other claims that the Federal Circuit has found to be directed to ineligible subject matter.  In *Beteiro*, the claim involved "a computer-implemented method" and communication device comprising a "global positioning device" that "determines a position or location."  104 F.4th at 1353–54.  The Federal Circuit held that the claims were "directed to the abstract idea of 'exchanging information concerning a bet and

16

allowing or disallowing the bet based on where the user is located.'" *Id.* at 1355. Moreover, the Federal Circuit noted that its prior decisions have held that "methods of providing particularized information to individuals based on their locations, to be abstract." *Id.* at 1356.

Fourth, the location-based betting is similar to a real-world brick-and-mortal casino. As explained in *Beteiro*, the claimed method is like the "actions of a teller at a casino that straddled state lines, who had to ensure patrons were on the Nevada side of the building . . . before accepting a bet." 104 F.4th at 1356 (citation modified). As the Federal Circuit pointed out, "those accepting bets have *always* had to confirm that the bettor with whom they were dealing was located in a place where gambling was allowed." *Id.* (citation modified). Accordingly, "the claims here are directed to a fundamental and longstanding economic activity, i.e., an abstract idea." *Id.* at 1357.

MGV's comparison of this case to *WinView, Inc. v. FanDuel, Inc.*, Civ. No. 21-13807, 2025 WL 1908758, (D.N.J. July 11, 2025) is inapposite. (Opp. at 10–11.) There, the district court found the patent made specific technological improvements involving the "use of a server device comprised of a storage mechanism and an application for interacting with the storage device mechanism in order to conduct simultaneous multiple contests of skill or chance corresponding to one or more events." *WinView*, 2025 WL 1908758, at *8. In contrast, the '679 patent merely recites the use of a "graphical user interface" and a "control function" ('679 patent at 36:36), which are nothing more than "generic descriptions of well-known computer components." *Affinity Labs of Texas, LLC*, 838 F.3d at 1270. Indeed, these computer components simply carry out the abstract idea of location-based wagering and do not render the '679 patent non-abstract. *See In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) (physical components such as a telephone and a server "merely provide a generic environment in which to carry out the abstract idea"). In summary, the Court finds that claim 1 is directed to an abstract idea.

17

*Alice Step 2*  The Court will now search for an "inventive concept."  According to MGV, "the claims of the '679 patent recite one or more inventive concepts that are rooted in computerized sports-betting technology and overcome problems specifically arising in the realm of computerized sports-betting technologies."  (Compl. ¶ 65.)  As alleged, the '679 patent "allows sports-betting operators to set when a micro-betting opportunity begins and ends while also ensuring secure access to the wagering service based on the user's geographic location."  (*Id.*)  "But the district court need not accept a patent owner's conclusory allegations of inventiveness" that are "wholly divorced from the claims or the specification" of the patent.  *Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1379 (Fed. Cir. 2022).

Here, the claim limitations of the '679 patent, either individually or as an ordered combination, are nothing more than well-understood, routine, and conventional activities or claim elements that do not form an inventive concept.  *See Affinity Labs of Texas, LLC*, 838 F.3d at 1271.  Claim 1 simply recites the use of generic features, such as a graphical user interface, control function, and mobile devices to implement the underlying idea.  But "generic computer implementation" is insufficient to transform a patent-ineligible abstract idea into a patent-eligible invention.  *Alice*, 573 U.S. at 212.  Nor is MGV's assertion that the patent allows sports-betting operators to set when a micro-betting opportunity begins and ends enough to transform the '679 patent into an inventive concept. (Compl. ¶ 65.)  Indeed, as DraftKings points out, setting when a betting opportunity begins and ends has always been a feature of making a bet.  There is also nothing inventive about the ordered combination.  All the steps in claim 1 are what one would expect to see when implementing the abstract idea of location-based wagering on a computer.  Thus, the Court finds that claim 1 of the '679 patent (and the other claims it represents) claims ineligible subject-matter under Section 101.

18

2.      The '244 Patent

*Alice Step 1*  Claim 1 of the '244 patent claims similar subject matter as claim 1 of the '679 patent and is directed to the abstract ideas of (1) authorizing access to a wagering system based on location and (2) processing or offering an additional micro-bet based on processing a test to determine whether a user selected a micro-bet.  Claim 1 recites the generic steps of "invoking," "determining," "authorizing," and "generating."  ('244 patent at 31:29–32:7.)  As discussed above, authorizing access based on location is abstract.  Nor do the additional steps in claim 1 of the '244 patent render the claim non-abstract.  Indeed, processing a test to determine whether an additional micro-bet should be offered is "within the abstract idea category." *Elec. Power Grp.*, 830 F.3d at 1353 (holding that "collecting information, analyzing it, and displaying certain results" are a "familiar class" of abstract ideas).  Claim 1 simply processes a test to determine whether a micro-bet should be entered, and if not, whether a new micro-bet should be offered to the user.  If the micro-bet is processed, the claims will then generate the result of that bet to the user.  Presenting new micro-bets or generating a result of a processed micro-bet, without more, do not render this claim non-abstract. *Id.* at 1354 ("[M]erely presenting the results of abstract processes of collecting and analyzing information, without more (such as identifying a particular tool for presentation), is abstract as an ancillary part of such collection and analysis.").

Moreover, the language in claim 1 is results oriented.  There are no details about how to determine the location of the mobile device, how to process the test, or how to generate the result of the test.  ('244 patent at 31:37–32:7.)  This type of result-focused language, with no specificity about how to achieve the results, is routinely found to be abstract. *See Beteiro, LLC*, 104 F.4th at 1356.

In its Opposition, MGV argues that its claimed feature of "processing a test" is not abstract because it "improves latency management," "saves processing power," and "prolongs battery life

19

by reducing the thermal load associated with handling data streams." (Opp. at 15.) MGV contends these features are accomplished because "[t]he secured server recognizes the user's selections before [the server] processes and enters the micro-bet, thus avoiding the unnecessary round-trip data transmission for unselected wagers."[1]  (*Id*.)

As a first matter, MGV's argument does not appear to align with its patent.  Based on Figure 7 of the '244 patent and the corresponding detailed description ('244 patent 16:66–17:19), it is the user interface [244]—rather than the secured server [240]/[245]—where the following steps take place: selecting a micro-bet [712], recognizing whether a micro-bet has been placed [714], and/or offering additional micro-bet choices [716].  This occurs prior to the secured server entering a micro-bet.  (*See* '244 patent Fig. 7.)  Dedicating the user interface to performing the pre-bet-entering operations would seem more likely to provide improved latency, processing power, and streaming efficiencies because it would eliminate the need to communicate with the server.  Either way, as DraftKings observes, none of these benefits that MGV professes are either disclosed in the patent or alleged in the Complaint.  Even if they were, the benefits are the type of basic improvement to user experience that do not render a claim non-abstract.

MGV also argues that the "display-screen feature . . . improves computer functionality by displaying micro-betting GUI options while simultaneously displaying synchronized live macro-event video." (Opp. at 16.)  This configuration purportedly "overcomes technological obstacles like delayed micro-betting opportunities by enabling the user to have a split screen or use multiple screens to view a macro-event in real time and its specific micro-betting opportunities

---

[1] MGV's opposition brief states that recognition of the user's micro-bet selections occurs at the secured server.  (Opp. at 15.)  The Court infers this was an inadvertent error.  Based on Figure 7 of the '244 patent and the corresponding detailed description ('244 patent 16:66–17:19), it appears more likely that MGV intended to instead identify the user interface [245], where the following steps take place: selecting a micro-bet [712], recognizing whether a micro-bet has been placed [714], and/or offering additional micro-bet choices [716].  The Court's inferences are supported by MGV's arguments regarding latency, processing power, and streaming efficiencies, which also make more sense if these steps are performed locally at the user's device rather than at the remote, secured server.

simultaneously." (*Id.*)  Critically, however, the patent disclosure fails to describe *how* to achieve the simultaneous split screen.  ('244 patent at 20:19–31.)  Moreover, the display screens themselves are generic components that have already been developed by others. (*Id.*)  The display screen feature also resembles a traditional brick-and-mortar casino, at which a patron can view multiple screens and make wagers accordingly.  Thus, the Court finds that the '244 patent is directed to the abstract idea of: (1) authorizing access to a wagering system based on location and (2) processing or offering an additional micro-bet based on processing a test to determine whether a user selected a micro-bet.

*Alice Step 2*  DraftKings asserts that claim 1 of the '244 patent uses language that describes the functions of abstract ideas and cannot form an inventive concept.  (Moving Br. at 18.)  In its Opposition, MGV argues that "the '244 patent represents a system architecture designed to solve the real-world problem of enabling lawful, real-time, remote micro-wagering in a mobile environment by synchronizing high-frequency, user-specific bet offerings with live streaming content, minimizing latency in offering and processing wagers, managing network bandwidth by selectively transmitting betting opportunities, and conserving computational resources in both server and client environments." (Opp. at 18.)

Like the '677 patent, the Court finds that the '244 patent lacks an inventive concept.  The steps in claim 1 of determining a location and authorizing access to a wagering service lack an inventive concept for the same reasons at the '677 patent.  Moreover, the steps—of processing a test, determining whether to enter a micro-bet or offer new micro-bets, and generating the result of the micro-bet—use functional language and describe the abstract method.  These steps are analogous to conventional casino practices at which a teller may enter or offer new bets to an individual.  These steps also use conventional computer components and do not purport to improve

21

any computer technology.  As noted above, MGV's argument regarding the purported technological improvements of "synchronization" and "minimizing latency" is unsupported by the patent and the Complaint.  Even if it was, designing a computer-implemented method to perform one of its operations either locally or remotely depending on the benefits being sought is not inventive, it is a matter of competent engineering.  Accordingly, the Court finds there is no inventive concept that transforms the abstract idea of processing or offering micro-bets into a patent-eligible idea.

### 3.    The '311 Patent

*Alice Step 1*  DraftKings argues that the '311 patent claims are directed to the abstract idea of "analyzing and providing information about a potential micro-bet and receiving a micro-bet from an authenticated remote device."  (Moving Br. at 19.)  MGV argues that DraftKings oversimplifies the claims and that, instead, the claimed micro-betting is a "technological solution to a technological problem."  (Opp. at 20.)  Specifically, MGV asserts that the '311 patent "overcomes the technological problems of multi-regional regulation issues, missed micro-betting options, poor user experience, cheating/bet manipulation from static or predictable micro-bet options, and lack content synchronization."  (*Id.*)

Claim 1 of the '311 patent recites six steps: (1) providing a micro-bet system; (2) authenticating a remote computing device; (3) identifying a micro-outcome within a macro-event; (4) generating multiple betting options; (5) providing information about the macro-event; and (6) receiving a micro-bet.  ('311 patent at 17:15–55.)  Each step reflects an abstract idea directed to analyzing and presenting information related to a potential micro-bet from an authenticated remote device.  *See CG Tech. Development, LLC v. William Hill U.S. Holdco, Inc.*, 404 F. Supp. 3d 842, at 849 (D. Del. 2019) (holding that "receiving information of a live event, determining probabilities based on that information and information existing prior to the event, creating a betting market,

receiving bets, closing the betting market, and resolving bets" are abstract concepts traditionally completed by human gaming operators). These steps mirror the "generic" processes the Federal Circuit has repeatedly held to be abstract, including "detecting information, generating and transmitting a notification based on the information, receiving a message (bet request), determining (whether the bet is allowed based on location data), and processing information (allowing or disallowing the bet)." *Beteiro*, 104 F.4th at 1355–56. Moreover, "micro-betting" itself is an abstract idea, as it constitutes "a method of exchanging financial obligations," long recognized as ineligible subject matter. *In re Smith*, 815 F.3d 816, 819 (Fed. Cir. 2016). While a micro-bet may be of a different form than a bet on a macro-event, the fundamental principle remains the same.

The claims also fall squarely within the principle that "obtaining, manipulating, and displaying data, particularly when claimed at a high level of generality, are abstract concepts." *AI Visualize, Inc.*, 97 F.4th at 1378. Although MGV contends that the '311 patent does more than merely process data and instead describes how to achieve its results (Opp. at 20), neither the claims nor Complaint provide such detail. Rather, claim 1 is drafted using result-focused language that courts routinely find to be abstract. *See AI Visualize, Inc.*, 97 F.4th at 1378. For instance, the claim recites "generating multiple betting options" without explaining how that generation occurs, stating only that the options are displayable on a screen. ('311 patent at 17:34–40.)

Nor do the claims present a technological solution to a technological problem. MGV's assertion that the '311 patent improves user experience, cheating/bet manipulation, and content synchronization are unsupported by the claim language. Likewise, MGV's argument that the patent addresses multi-regional regulatory concerns implicate legal—not technical—problems. *See Beteiro*, 104 F.4th at 1357 ("Content regulation and checking legal compliance are rooted in

23

the abstract...").  Accordingly, the Court concludes that the '311 patent is directed to the abstract idea of analyzing and providing information about a micro-event.

*Alice Step 2*  The '311 patent also does not contain an inventive concept.  MGV argues that the '311 patent "allows sports-betting operators to authorize users to place bets on displayed micro-outcomes within larger macro-events while providing those bettors with real-time video of the macro-event on the same GUI." (Opp. at 21.)  This argument simply restates the abstract idea and cannot form the inventive concept.  *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354, 1359 (Fed. Cir. 2018) ("It is clear from *Mayo* that the 'inventive concept' cannot be the abstract idea itself[.]").  Moreover, the patent only recites generic computer elements and does not provide any technical solutions that would transform the abstract idea into an inventive concept.  The claimed computer components, such as the processor, memory, server, data bus, and remote computing device "may be conventional components." ('311 patent at 9:42–60.)  "[T]aken individually or in combination, the recited limitations neither improve the functions of the computer itself, nor provide specific programming, tailored software, or meaningful guidance for implementing the abstract concept."  *Intell. Ventures I*, 850 F.3d at 1342 (citing *Alice*, 573 U.S. at 224).  As such, the '311 patent does not go beyond "well-understood, routine, conventional activity" that transforms the abstract idea into an inventive concept.  *Aatrix Software, Inc.*, 890 F.3d at 1359.

### 4.    The '231 Patent

*Alice Step 1*  DraftKings argues that claim 1 of the '231 patent is directed to the abstract idea of "configuring a designated control function for managing randomized micro-bets to determine when a micro-bet is available or closed to bettors."  (Moving Br., Attachment 1.)  According to DraftKings, claim 1 is abstract because "it constitutes a method for organizing human activity," is drafted using result-focused language, and does not improve the functionality of a

computer. (Moving Br. at 27–29.) In its Opposition, MGV argues that its "control function" and "randomization" is a "technological solution to a technological problem." (Opp. at 22.) Specifically, MGV asserts that these features prevent cheating and time-lapsed bet options, something that cannot be performed by a human. (*Id.* at 23.)

The wagering system in claim 1 encompasses a fundamental human activity. Indeed, the specifications of the '231 patent confirm this:

> Such features would find particularly useful application in the context of, for example, a casino sports book. A sports book manager or sports book personnel can, for example, sit in a sports book booth and control the availability of micro betting on a game being televised in the sports book and the gamblers sit there and bet on every play as they watch. In some situations "little" booths may be in the sports book where a better can watch a game and on a screen next to it, micro-bets are constantly made available with respect to that game. The gambler or user thus watches on one screen and bets on the other.

('231 patent at 18:11–21.) Although it would be more cumbersome, a person could offer micro-bets and track results using a pen and paper, something courts have routinely held to be abstract. *See Willaim Hill U.S. Holdco, Inc.*, 404 F. Supp. 3d at 849 (D. Del. 2019) (holding that "managing a wagering system" during a live sporting event was abstract because it simply automated a manual process); *RaceTech, LLC v. Kentucky Downs, LLC*, 167 F. Supp. 3d 853, 863 (W.D. Ky. 2016), *aff'd*, 676 F. App'x 1009 (Fed. Cir. 2017) (finding abstract a wager system that could be achieved through ordinary mental processes); *CG Tech. Development, LLC v. Big Fish Games, Inc.*, Civ. No. 16-857, 2016 WL 4521682, at *9 (D. Nev. Aug. 29, 2016) (patents that facilitate wagering in the gaming industry are abstract).

The sole technological improvement claimed by MGV is the "randomization" and "control function," which it asserts were designed to prevent cheating. (Opp. at 22.) MGV asserts these features constitute more than just a method for organizing human activity. (*Id.* at 23.) Rather,

25

MGV contends its claims "require automated, programmatic, and networked mechanisms (e.g., control functions, randomization, remote management, device-specific wireline/wireless communications, code on a processor)." (*Id.*) But "mere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology." *William Hill*, 404 F. Supp. 3d at 849 (quoting *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017)). Moreover, cheating is not a technological problem and has always been something that casino operators have tried to prevent. Put simply, the '231 patent uses a computer as a tool to implement the abstract idea of randomizing micro-bets.

*Alice Step 2* DraftKings asserts that there is no inventive concept in claim 1 of the '231 patent, which simply describes the functions of the abstract idea without any particularity. (Moving Br. at 30.) In its Opposition, MGV contends that claim 1 "allows for randomizing micro-betting options that operate on an interconnected network architecture that provides for legal, regulated, remote betting capabilities." (Opp. at 24.)

There is nothing inventive about randomizing bets. Randomization is well-understood, routine, and conventional in the context of betting and is comparable to shuffling a deck of cards or pulling a lever on a slot machine. Moreover, the steps of "designating" and "configuring" a control function do "no more than require a generic computer to perform generic computer functions." *Big Fish Games*, 2016 WL 4521682, at *4. The technology involved in the claims are also generic, with the specifications conceding that the processor, memory, data bus, computer, wireless handheld device, Smartphone, and network "may be conventional components such as those used in many conventional data processing systems." ('231 patent at 9:60–63.)

Moreover, "considered as an ordered combination, the computer components of [the plaintiff's] method add nothing . . . that is not already present when the steps are considered

26

separately."  *Alice*, 573 U.S. at 225 (citation modified).  The claim simply recites that the technology designates a control function, configures the control function, and then randomizes the available micro-bets.  ('231 patent at 22:7–19.)  But there is nothing in the claim that purports to improve the functioning of any technology.  The '231 patent "amount[s] to nothing significantly more than an instruction to apply the abstract idea" to generic computer components.  *Alice*, 573 U.S. at 225–26.  That is not "enough" to transform the abstract idea into a patent-eligible invention. *Id.*

> 5.    The '392 Patent

*Alice Step 1*  As previously explained, claim 10 and 13 of the '392 patent are representative. DraftKings argues that claim 10 is directed to the abstract idea of "displaying a micro-betting GUI for placing and managing randomized micro-bets on one screen and displaying, on another screen, video of the macro-event the micro-bets are based on."  (Moving Br., Attachment 1.)  DraftKings argues that claim 10 is abstract because it "broadly recites generic steps," is results oriented, does not improve computer functionality, and is analogous to real-world activities.  (*Id.* at 32–34.)  In response, MGV asserts that "[t]he claimed synchronization display feature solves the technological problems of regulation, timing accuracy, cheating/bet manipulation from static or predictable bet options, and content synchronization in betting."  (Opp. at 25.)

The Court agrees that claim 10 is abstract.  As DraftKings points out, the steps of "displaying" a micro-betting GUI, "providing" another display screen for displaying video, and "randomizing" micro-bets are "generic steps" that are similar to steps of "obtaining, manipulating, and displaying data" that the Federal Circuit has found to be abstract.  *AI Visualize*, 97 F.4th at 1378.  Claim 10 also recites a system using results oriented language: *displaying* information on a display screen; *providing* an additional display screen for displaying video; and *randomizing* micro-bets.  ('392 patent at 19:38–20:2.)  Neither claim 10 nor any of the dependent claims explain

*how* to achieve the displaying, providing, and randomizing steps.  Nor does it matter that these steps are completed on a GUI or display screen, because these are generic computer components and do not improve computer functionality.  Moreover, the fact that the steps include the synchronization of multiple display screens does not make the '392 patent non-abstract.  *See Trading Techs. Intern., Inc. v. IBG LLC*, 921 F.3d 1084, 1093 (Fed. Cir. 2019) ("As a general rule, the collection, organization, and display of two sets of information on a generic display device is abstract.")

Regarding claim 13, DraftKings argues that it is directed to the abstract idea of "enabling a plurality of players to meet online and place micro-bets on a selected macro event."  (Moving Br., Attachment 1.)  According to DraftKings, the claim is a method for organizing human activity, uses result-focused language, and does not improve computer functionality.  (*Id.* at 36–38.)  In its Opposition, MGV asserts that claim 13 recites "automated networked mechanisms," cannot be performed by humans, and involves more than the use of generic computer components.  (Opp. at 27–28.)

Here, claim 13 involves six steps: (1) permitting players to meet online and place micro-bets; (2) electronically selecting a macro-event; (3) allowing players to select a controller and control function; (4) selecting micro-bets to be made available; (5) placing at least one micro-bet; and (6) randomizing available micro-bets.  ('392 patent at 20:15–35.)  The focus of this claim is on organizing and managing how players place micro-bets, which, put differently, is a way of organizing human behavior.  The computer components simply collect and share the data so that users can interact with one another, which are "fundamental practices of the gaming industry." *Big Fish*, 2016 WL 4521682, at *9.

The language recited in claim 13 also confirms that the patent is abstract. Each of the steps describe the result, but do not explain how to achieve that result (e.g., randomizing micro-bets without describing how to achieve randomization). Claim 13 also does not purport to improve computer functionality. Each of the technological components are conventional parts and are simply used to implement the abstract idea. ('392 patent at 7:37-43, 7:59-8:21.) Accordingly, claim 13 is directed to an abstract idea.

*Alice Step 2*  There is nothing in claim 10 or 13 that contains an inventive concept either individually or in an ordered combination. Claim 10 simply recites steps for displaying multiple display screens and randomizing available micro-bets. These steps are similar to conventional casino activity at which a patron could view multiple screens and place bets. Moreover, all the claim limitations use conventional computer elements. Claim 13 similarly does not contain an inventive concept, which simply recites a process by which multiple users can make bets. There is nothing inventive about allowing more than one person to make a bet.

MGV argues the claims are inventive because they cannot be performed by a human. (Opp. at 28.) But, as the Federal Circuit has explicitly observed, "the inability for the human mind to perform each claim step does not alone confer patentability." *FairWarning IP, LLC v. Iatric Systems, Inc.*, 839 F.3d 1089, 1098 (Fed. Cir. 2016). And there is nothing inventive about randomizing micro-bets, which, again, is similar to shuffling cards at a poker table to prevent cheating. Accordingly, the '392 patent claims patent-ineligible subject matter.

29

## V.    <u>CONCLUSION</u>

For the reasons stated above, the Court will **GRANT** DraftKings' Motion to Dismiss and

**DISMISS** the Complaint **WITH PREJUDICE**.  An appropriate Order will follow.

Date: March 30, 2026

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

30